514 P.2d 36

Lena Colleen **BURNSIDE**,
Plaintiff-Appellant,

v.

Duane C. **BURNSIDE**, Defendant-
Appellee.

No. 9609.

Supreme Court of New Mexico.

Sept. 14, 1973.

James R. Toulouse & Associates, Mary C. Walters, Albuquerque, for appellant.

Marchiondo & Berry, James E. Casados, Albuquerque, for appellee.

OPINION

OMAN, Justice.

This is a divorce case in which the trial court denied plaintiff's petition for alimony and additional attorney fees. This appeal involves only these two issues. We reverse.

It is plaintiff's position that the trial court abused its discretion in (1) denying alimony to her, since she was effectively precluded from presenting evidence on this issue, and (2) denying her additional attorney fees without hearing any testimony on this issue.

The movement of this case through the trial court was long and pathetic. Plaintiff filed her complaint on September 25, 1969. She was granted a divorce from defendant and awarded $350.00 to be applied

as "partial payment on [her] attorney fees" by decree entered December 9, 1969. It was recited in this decree:

"That there is expressly excluded herein any provisions for the settlement of the parties' property rights, the custody of the minor children, provisions for the payment of alimony by the defendant to the plaintiff, and such other matters as would necessarily be heard and determined in a hearing on the merits between the parties."

Thereafter and before the entry of the final order on July 26, 1972, from which this appeal has been taken, the plaintiff underwent psychiatric examinations, was hospitalized for some time, and, in another proceeding, was declared to be incompetent and guardians of her person and estate were appointed The custody of the three minor daughters of the parties was taken from plaintiff and awarded temporarily to defendant. The parties and the guardian of plaintiff's estate engaged in rather extensive discovery proceedings by written interrogatories and filed motions, counterclaims, petitions, responses, replies and objections, and three or four hearings were conducted.

The final hearing was held on June 16, 1972, and the final order entered on July 26, 1972. The transcript of the final hearing shows the following relative to the issue of alimony:

(1) During the presentation of opening statements by counsel and prior to the actual presentation of evidence, the following statements were made by plaintiff's attorney and the court:

"MR. RUUD [plaintiff's attorney]: * * *.

"In addition to that we have asked the Court to consider at this time the issue of alimony, which we understood had remained and was reserved for further consideration throughout these proceedings.

"Mr. Toulouse, who has been the attorney on this case from its inception, was prevented from being here today because of a death in his family. I was advised that the Court was of the impression that the question of alimony had been previously disposed of. Therefore, we are going to ask the Court at this time to leave the question of alimony in abeyance to be further considered after Mr. Toulouse will be able to be in the courtroom.

"THE COURT: That part of your Motion is granted and your request is granted.

" * * *.

"THE COURT: * * *. Each party is to defray their own expenses. So that leaves us then with the alimony. And then, as I have indicated, on the issue of alimony, I will let you consult with Mr. Toulouse, but it is my understanding that has already been concluded. But I won't enforce that issue since you are at a disadvantage. Find out from Mr. Toulouse. If necessary, I will grant you another hearing on that issue. The only thing remaining now is the custody of the children."

(2) Thereupon the attorney for defendant apparently told the representative of the guardian of plaintiff's estate, who had appeared pursuant to subpoenas issued at the request of both parties for the purpose of testifying as to the financial needs of plaintiff, that he could leave, and he left.

(3) After plaintiff had offered the testimony of a witness upon the issue of custody of the three minor children, the following colloquy took place between the trial court and counsel for the parties:

"THE COURT: Thank you Doctor, you may step down. Mr. Ruud, I have been thinking that perhaps we ought to go into the matter of alimony at this time. I would like to conclude all of the issues and not leave anything hanging. This has been the problem here. Why don't you argue to me or present whatever evidence on that issue you may have. You are asking for alimony, how can you justify it?

"MR. RUUD: Well, Your Honor, we would justify it on this basis, that the question of alimony, according to my understanding, was reserved in this case for disposition at a later date, and that be the case, then our support of her right to alimony would be the fact that the Plaintiff is now shown to be incompetent. She has a guardian appointed to handle her estate and if she is too incompetent to handle her estate and too incompetent to have the custody of the children, and the evidence will show that she has not been able to work—she has had one job for three weeks and lost it and has no means of support excepting the $65,000.00 that is coming in from the community property that was originally divided.

·"On the other hand, the Defendant is left in a position of making a substantial income and has continuously done so, and with the Plaintiff being unable to support herself, and we believe that is primary justification for alimony.

"THE COURT: Mr. McAtee?

"MR. McATEE [defendant's attorney]: Yes, Your Honor. Now, alimony is based upon need, and when the need doesn't exist, no alimony exists. That has been the decision of our Supreme Court for years. * * *

" * * *.

" * * *. I can see no need at this time for alimony, and I think that, again, that is something that would penalize Mr. Burnside. * * *

" * * *.

"THE COURT: All right, I find and I hearby award the permanent custody of the children to the Defendant.

"The other issue you presented to this Court on the matter of alimony, I find and hearby so decree no alimony shall be awarded in the matter."

(4) There was absolutely no evidence adduced upon the issue of alimony, and no stipulation of facts relative thereto was tendered. On the basis of the statements of the attorneys, the trial court apparently decided the issue after having earlier assured plaintiff's attorney that this issue would be deferred for a later date and after defendant's attorney had told the representative of the guardian of plaintiff's estate that he might leave.

At the June 16, 1972 hearing, the following occurred relative to attorney fees:

(1) During the opening statements or colloquy between the court and counsel, the following was stated:

"MR. McATEE: As far as attorney's fees are concerned, Mr. Burnside has paid, and we think we can get additional records, but I have a record here—has paid $2,464.00 to Mr. Toulouse. We think we can add to that several more hundred dollars. He has paid Soleberg and Associates; paid, by Court Order, for the examination by Doctor Hovda; and he has married; he has three young ladies to raise; and there's only so much you can do. The Court knows that if you tie a man to a position that he possibly is encumbered and overburdened, he will take the easiest way out. We are not saying that he will. But as far as the attorney's fees are concerned, we paid to Mr.—

"THE COURT: Mr. McAtee, to expedite the hearing and so forth, I will not allow attorney's fees in this matter, Mr. Ruud, to Plaintiff's counsel.

"* * *.

"THE COURT: * * *. Also, the issue of attorney's fees, that is concluded. I will not award attorney's fees. * * *"

(2) After plaintiff had concluded her evidence on the issue of custody of the children, the following occurred:

"MR. RUUD: Your Honor, not to press the issue, but I guess the Court has already foreclosed my attorney fees, on the part to be awarded against Mr. Burnside?

"THE COURT: That's right."

The court made the following findings and conclusions pertinent to the issues of alimony and attorney fees:

## "FINDINGS OF FACT

### "II.

"That no testimony was given as to the financial needs of Plaintiff, although a representative of the bank [guardian of plaintiff's estate] was in Court, and could have testified if called upon.

"* * *.

### "V.

"That while attorneys' fees were requested by Plaintiff's counsel, there was no citation of law given the Court as to why Defendant should be compelled to pay attorneys again, or was any testimony given in support thereof."

## "CONCLUSIONS

"1. That the award of alimony, attorneys' fees, and the custody of children, is a matter resting in the sound discretion of this Court.

"2. That the Court has conducted hearings on the within matter repeatedly since its inception, and he believes that the findings and orders of the Court meet all requirements of sound judicial discretion."

In the final order entered on July 26, 1972 the trial court also found: "3. That plaintiff is not entitled to any alimony," and "4. That plaintiff is not entitled to any attorneys' fees, although the Court does not rule out said attorneys' [sic] being paid by the plaintiff." The court then ordered: "* * * that plaintiff's motion for alimony and for attorneys' fees be and the same is hereby denied."

■ As to the issue of alimony, clearly this issue was raised by the pleadings, was reserved for hearing on its merits by the decree entered December 9, 1969, and, at the final hearing on June 16, 1972, was at first continued for a subsequent time when

Mr. Toulouse, plaintiff's attorney from the inception of the case, could be present and for a hearing on the merits, if necessary. It was not until witnesses had been excused and evidence had been adduced on the remaining issue of child custody, that for some reason the trial court concluded this issue would then be determined, apparently on the basis of the statements of counsel quoted above.

■ The right to alimony is a continuation of the right to support. It is a personal and not a property right. 2 Nelson, Divorce and Annulment § 14.06 (2d Ed. 1961). In New Mexico this right is recognized, but it is not an absolute right. The award or denial of alimony rests within the sound discretion of the trial court in making a determination as to what is just and proper under the circumstances. See § 22–7–6, N.M.S.A.1953 [Amended by N.M. Laws 1973, Ch. 319 § 7]; Muckleroy v. Muckleroy, 84 N.M. 14, 498 P.2d 1357 (1972); Fitzgerald v. Fitzgerald, 70 N.M. 11, 369 P.2d 398 (1962); Mindlin v. Mindlin, 41 N.M. 155, 66 P.2d 260 (1937).

However, a determination based upon no evidence, and arrived at in the manner in which it was here reached, cannot be equated with sound discretion. The trial court's finding No. II. above quoted, although true in the abstract, does not square with what occurred in the proceedings on June 16, 1972.

Plaintiff contended a need on her part for a continuation of her right to support. Defendant denied this need. Thus, the issue of alimony was raised, and a proper disposition of this factual issue entitled plaintiff to introduce evidence and be fully heard in support of her contention. The trial court, by disposing of the issue on the basis of the colloquy between it and counsel, denied plaintiff her right. Compare Morico v. Cox, 134 Conn. 218, 56 A.2d 522 (1947); Tularosa Ditch Case, 16 N.M. 200, 114 P. 285 (1911); Bole v. Bole, 76 Cal. App.2d 344, 172 P.2d 936 (1946).

■ As to the issue of attorney fees, it appears that a total of $2,000.00 had been

paid by defendant to plaintiff for this purpose. Reference is made in a statement by defendant's counsel, which is above quoted, to $2,464.00 having been paid by defendant. However, in her brief in chief plaintiff has asserted, and has supported by transcript references, that she had been awarded $2,000.00. Defendant does not refute this assertion. He does refer to "fees in excess of $2,000.00," but he makes no reference to the transcript in support thereof.

The first award of $350.00 as "partial payment" of attorney fees was made on December 9, 1969, at the time the divorce was granted. The second award in the amount of $1,650.00 was made on December 17, 1970, for the recited purpose of being "applied upon the plaintiff's attorney fees."

 We agree with the trial court that the amount of an award for attorney fees rests within the sound discretion of that court. However, discretion in this regard must have been exercised with the purpose in mind of insuring the plaintiff an efficient preparation and presentation of her case. Section 22–7–6, supra; Moore v. Moore, 71 N.M. 495, 501, 379 P.2d 784, 788 (1963). The trial court's finding No. V. above quoted, and which recites the facts upon which the trial court apparently relied for its conclusion that plaintiff was entitled to no further award of attorney fees, can hardly be considered as demonstrating an exercise of sound discretion in determining that $2,000.00 previously awarded was sufficient to insure her an efficient preparation and presentation of her case. Obviously she was precluded at the outset of the final hearing, and at every point thereafter, from citing any law or giving any testimony on the question of attorney fees.

It may be that the evidence she could and would have adduced in support of her contentions that she was entitled to alimony and to a further award of attorney fees would have accomplished her nothing, but she was entitled to present her evidence on these questions. It was improper for the trial court, under the circumstances, to deny her request upon the grounds recited in Findings Nos. II. and V.

To the extent that the order of the trial court denied plaintiff alimony and further attorney fees, the order should be reversed. The cause should be remanded to the district court for further proceedings on the issues of alimony and attorney fees consistent with the views herein expressed.

It is so ordered.

MONTOYA, and MARTINEZ, JJ.