580 P.2d 958

Louise B. SPINGOLA,
Plaintiff-Appellant,

v.

Lawrence J. SPINGOLA,
Defendant-Appellee.

No. 11589.

Supreme Court of New Mexico.

June 5, 1978.

Perry S. Key, Kenneth S. McDaniel, Albuquerque, for plaintiff-appellant.

Atkinson & Kelsey, Jan B. Gilman, David H. Kelsey, Albuquerque, for defendant-appellee.

## OPINION

EASLEY, Justice.

The plaintiff-appellant, Louise B. Spingola (mother), sued defendant-appellee, Lawrence J. Spingola (father), seeking to increase the amount of child support awarded in their divorce decree. The trial court refused the requested increase. We reverse.

### Issues

The questions we consider are:

(1) whether the trial court properly went behind an unambiguous original decree and considered evidence that added an additional factor to the stipulated settlement agreement of the parties incorporated in the final decree;

(2) whether, on motion to modify a decree as to child support, it is mandatory that the trial court specifically consider and make findings regarding a defendant-father's current financial resources;

(3) what criteria must be examined in determining whether a change in the support level is justified; and

(4) what legal effect and evidentiary weight, if any, must we give the Bernalillo County Child Support Guidelines in reviewing a contest involving modification.

### Facts

The original decree incorporated a stipulated settlement which provided that the father would pay $1,000.00 per month in support of three minor children, aged 3, 7 and 10, which was approximately what was called for by child support guidelines in use in Bernalillo County. At the time of divorce, the father was earning approximately $42,000.00 per year. At the time this petition was filed, the children were aged 6, 10 and 13 and the father's income had increased to approximately $87,000.00 per year. The latter income figure would have called for the father's paying more than $3,000.00 per month under the child support guidelines.

### Claims of the Parties

The mother alleges that material changes in circumstances have occurred warranting an increase in support, namely the circumstantial increase in the father's salary, the increased financial needs of the now older children, cost of enrolling an additional child in private school and the general effects of inflation. She alleges that the trial court failed to make any findings regarding these matters except for finding that the mother had experienced a twenty percent increase in living expenses. She urges that the trial court's action amounted to an abuse of discretion, particularly its failure to comply with § 22–7–11.1(A), N.M.S.A. 1953 (Supp.1975) which calls for the court to make "a specific determination and finding" regarding the need for support, "*considering the financial resources of the parent.*" (Emphasis added.)

The father defends by saying that in negotiating the stipulated settlement the parties took into consideration the prospect of his wages increasing to as much as $100,-000.00 per year and that the establishment of $1,000.00 per month for support was based on a consideration of this escalation in income. He argues that the Bernalillo County Child Support Guidelines have no relevancy, nor does the fact that his income

has increased to $87,000.00 per year. His position is that the $1,000.00 furnishes the necessities for the children and that he is only obligated to that extent. He points to the evidence that the wife's income has increased by forty-two percent as further evidence that the children's needs are being met.

### The Court's Decision

The court agreed with the father's position and made numerous findings about the mother's increase in income, about the fact that she had remarried and that her present husband was furnishing support for her and found that her living expenses had increased by twenty percent while her income had increased by forty-two percent. The court then found that there had been no substantial change in circumstances to justify an increase in child support, and that the welfare of the children was adequately provided for by the $1,000.00 per month payment. The court concluded that the enhanced financial position of the father was not such as to justify an increase. The court further found that there had been no change in circumstances that would be detrimental to or materially affect the welfare of the children.

Requested findings by the mother showing the increase in the father's salary, the application of the Bernalillo County Guidelines and the specific areas of increased need, which would indicate the necessity for more support, were refused by the court.

### Court Going Behind the Original Decree

■ There is no substance to the father's claim that the parties agreed to the amount of $1,000.00 in contemplation that the father's income would increase to as much as $100,000.00 and, that, if it did so increase, the amount of $1,000.00 would still be fair. The stipulated agreement made no mention of such a covenant and there is no other substantial evidence to support the claim that the mother assented to such a term. There is no contention that the settlement agreement and the decree contain any ambiguity in this regard.

The judgment does not say that the mother waives the right to seek increases should the father's salary increase. We will not read such a waiver into the settlement. *Owen v. Burn Const. Co.*, 90 N.M. 297, 563 P.2d 91 (1977); *Rubenstein v. Weil*, 75 N.M. 562, 408 P.2d 140 (1965); *Boylin v. United Western Minerals Company*, 72 N.M. 242, 382 P.2d 717 (1963). The trial court was in error in presuming the mother had waived this right.

Even if the father's contentions on this issue were supported by the evidence, he would still be confronted by our holding in *Scanlon v. Scanlon*, 60 N.M. 43, 287 P.2d 238 (1955), that a contract for alimony incorporated in a divorce decree becomes merged into the decree and the decree is subject to modification even when it contains a provision that the agreement cannot be amended without the consent of both parties. The Court ruled that § 22–7–6, N.M.S.A.1953 controlled as a matter of public policy over the contrary provisions in the contract. The statute then in effect provided, as does our present statute, § 22–7–6(B)(2), N.M.S.A.1953 (Supp.1975), that the court "may modify and change any order in respect to alimony . . . whenever the circumstances render such change proper." Subsection (C) of the present statute has almost identical language as regards the court's power to modify a child support order.

■ The rights of the children, as innocent third parties, are involved in these agreements. To make such an agreement nonmodifiable would not be in the best interests of the children and for this reason is, as indicated by *Scanlon*, against the strong public policy of New Mexico.

### Mandatory Duty of Trial Court

Section 22–7–11.1 specifies that the court, in providing for proper maintenance and education of minor children, "*shall* made a *specific* determination and *finding*" regarding the need for child support, "*considering the financial resources of the parent.*" (Emphasis added.)

■ This section is mandatory and requires that evidence of the father's current financial resources be fully considered by the court and a finding be made based on that evidence. *Pitcher v. Pitcher,* 91 N.M. 504, 576 P.2d 1135 (1978). Findings may not rest upon mere speculation and conjecture. *Pitcher, id., Matter of Briggs,* 91 N.M. 84, 570 P.2d 915 (1977). It is the duty of the trial court to find all of the ultimate facts where a request is seasonably and properly made. *Curbello v. Vaughn,* 78 N.M. 489, 432 P.2d 845 (1967). The court may not disregard such undisputed relevant testimony on a material issue. *Lopez v. Maes,* 81 N.M. 693, 472 P.2d 658 (Ct.App. 1970), *cert. denied,* 81 N.M. 721, 472 P.2d 984 (1970). Deciding for the first time in New Mexico, as we do, that one of the criteria to which a trial court must look in these cases is what the life-style of the children would have been had the family stayed together, *Nielsen v. Nielsen,* 87 Idaho 578, 394 P.2d 625 (1964); *Sigesmund v. Sigesmund,* 115 Cal.App.2d 628, 252 P.2d 713 (1953), the importance of this evidence increases. It is ridiculous to assume that the welfare of the children would not have improved considerably by the time the father's income had doubled.

The trial court's adamant refusal to consider the dramatic increase in the father's income as a substantial change in circumstances was arbitrary, capricious and beyond the bounds of reason.

### Legal and Evidentiary Standards

Since this case will be remanded for further proceedings, and considering the manifest necessity for more specific guidance in this area of the law, we consider some of the controlling principles of law and evidentiary matters.

■ The issue before the trial court on a petition to modify the amount of child support is whether there has been a showing of a change in circumstances. The change must be substantial, materially affecting the existing welfare of the child, and must have occurred since the prior adjudication where child support was originally awarded.

*Unser v. Unser,* 86 N.M. 648, 655, 526 P.2d 790 (1974); *Allgood v. Orason,* 85 N.M. 260, 511 P.2d 746 (1973); *Merrill v. Merrill,* 82 N.M. 458, 483 P.2d 932 (1971); *Albright v. Albright,* 45 N.M. 302, 115 P.2d 59 (1941).

The burden of proof is on the moving party to satisfy the court that the circumstances have so changed as to justify the modification. *Edington v. Edington,* 50 N.M. 349, 176 P.2d 915 (1947).

■ On appeal from the denial of a petition to modify a child support, the reviewing court should decide: whether the findings of the trial court are supported by substantial evidence; whether any refused findings should have been made; and whether there was an abuse of discretion by the trial court. *Fox v. Doak,* 78 N.M. 743, 438 P.2d 153 (1968).

■ The awarding of child support rests within the sound discretion of the court. *Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974); *Muckleroy v. Muckleroy,* 84 N.M. 14, 498 P.2d 1357 (1972). Where an abuse of discretion is claimed by appellant, appellant bears a heavy burden, in view of the long-standing rule that the reviewing court will not overturn the action of the trial court absent a patent abuse of manifest error in the exercise of discretion. *Schaab v. Schaab,* 87 N.M. 220, 531 P.2d 954 (1974); *Hanberry v. Fitzgerald,* 72 N.M. 383, 384 P.2d 256 (1963). On appeal, the scope of review is limited to examining the record only to determine if the trial court abused its discretion by fixing an amount contrary to all reason. *Gallemore v. Gallemore,* 78 N.M. 434, 432 P.2d 399 (1967); *Sloan v. Sloan,* 77 N.M. 632, 426 P.2d 780 (1967); *Fitzgerald v. Fitzgerald,* 70 N.M. 11, 369 P.2d 398 (1962); *Jones v. Jones,* 67 N.M. 415, 356 P.2d 231 (1960); *Redman v. Redman,* 64 N.M. 339, 328 P.2d 595 (1958).

■ However, judicial discretion is a discretion which is not arbitrary, vague or fanciful, or controlled by bad temper or caprice, but is a discretion governed by principles, judicious consideration, honesty, common sense, and regular procedure for arriving at an equitable solution for all

concerned. *Urzua v. Urzua,* 67 N.M. 304, 355 P.2d 123 (1960).

The father relies on *Fullen v. Fullen,* 21 N.M. 212, 153 P. 294 (1915) to substantiate his claim that the welfare of the children demands only that he furnish funds for their "necessities." Our Court has not defined in any great detail the duties of a father in this regard. As early as 1935, in a case involving a contract of a minor, *Long v. Carter,* 39 N.M. 255, 44 P.2d 1040 (1935), our Court rejected the common-law rule that the term "necessaries" of infants meant simply "meat, drink and apparel." *Long* was concerned with automobile repairs contracted for by a minor. The Court held that an infant's necessities include "many of the conveniences of refined life, according to the circumstances and conditions of the parties." *Id.* at 255, 44 P.2d at 1040. The modern trend is clearly to broaden the meaning of "necessities."

The statutes use the terms "just and proper" and "necessary or advisable" in referring to what the court must order in the way of "care . . . maintenance or education" of the children of divorced parents. §§ 22-7-6 and 22-7-11.1, N.M.S.A. 1953 (Supp.1975). The paramount concern is the welfare of the child. *Merrill, supra; Terry v. Terry,* 82 N.M. 113, 476 P.2d 772 (1970). The decisions of this Court often speak of the "welfare" of the child in these cases without setting forth any general guidelines.

There is no adequate definition in the statutes or the case law of the term "welfare" in relationship to child support disputes. Looking to the generally accepted lay meaning, we find that Webster's Third New International Dictionary (G & C Merriam Company ed. 1971) provides the following definition:

welfare . . .

The state of faring or doing well: thriving or successful progress in life: a state characterized esp. by . . . happiness [or] well-being.

■ In providing for this "welfare," the trial court should consider the following guidelines:

(1) The total financial resources of both *parents,* including their monetary obligations, income and net worth, should be carefully examined. The courts should remember that the obligation of the mother to support the children is no different from that of the father. *Petition of Quintana,* 83 N.M. 772, 497 P.2d 1404 (1972).

■ (2) Consideration should be given to what life-style the children would be enjoying if the father and mother were not divorced and the non-custodial parent had his present level of income. *Nielsen, supra; Sigesmund, supra; see Long, supra.*

■ (3) Where the income, surrounding financial circumstances and station in life of the father demonstrates an ability on his part to furnish additional advantages to his children above their actual needs, the trial court should provide such advantages within reason. This does not mean providing "luxuries or fantastic notions of style . . . not normal for the stable, conservative, natural upbringing of a child according to the comfort, dignity and manner in which the father over the years has been accustomed to live." *Libby v. Arnold,* Dom.Rel.Ct., 161 N.Y.S.2d 798, 803 (1957). A reasonable regard for the real welfare of the children would dictate an avoidance of extravagant expenditures no matter what the wealth of the parents might be. *Gartner v. Gartner,* 79 R.I. 399, 89 A.2d 368 (1952).

■ (4) Since we look at what the life-style of the children would have been, if the parents had not divorced, in order to help fix the amount of child support, it is only fair to inquire as to what the life-style of the father would have been in relationship to visiting with and helping to influence and direct the lives of his children had there been no divorce. The non-custodial parent is entitled to the same love, affection, respect and companionship of the children as if the parents were not divorced, insofar as possible. The custodial parent, who usually has a great deal of influence over the children to prevent bitterness and

vindictiveness against the non-custodial parent, has a high duty to see that normal parent-child relationships with the non-custodial parent are preserved.

■ Therefore, on a motion to modify child support payments, it is proper for the trial court to inquire as to whether the custodial parent is fulfilling the duty to foster good relations between the non-custodial parent and the children. This may be considered as a factor bearing on the amount of child support that is granted over and above the normal necessities. Using reductions in child support payments as punitive measures is not favored, unless it can be demonstrated that the action is in the overall best interest of the children.

■ (5) Local district court guidelines serve a very useful purpose and should be consulted. In a multi-judge district, such rules given guidance to the judges, attorneys and litigants in their efforts to expedite the settlement of disputes over child support. They promote uniformity and reduce litigation.

■ (6) The number of children involved is a factor for consideration. Experience indicates that the support level for one child must be considerably higher than that necessary for the additional children.

■ (7) The court must look at the ages, physical condition and health of the parents and the children. It must consider whether the children have advanced into an age bracket where the expenses of caring for and maintaining them are substantially greater. Likewise, the attainment of majority by a child will affect the amount of support to be paid. *Schaab, supra.*

■ (8) One of the paramount concerns of the courts is that a high level of education and training be afforded children. The finest education that the parents can reasonably afford should be the criterion. Under the circumstances in this case, where two older children were in private school and the father could afford to send the third child to private school, it was not unreasonable for the mother to insist on the youngest child's being afforded enrollment in such school.

■ (9) Evidence of changes in the total number of dependents being supported by both parties demands the attention of the court. *McRoberts v. McRoberts,* 80 Idaho 511, 335 P.2d 342 (1959); *Barlow v. Barlow,* 282 S.W.2d 429 (Tex.Ct.App.1955).

■ (10) A subsequent remarriage by either or both of the parties may have some effect upon the financial resources available to support and maintain the children. *Albright v. Albright,* 45 N.M. 302, 304, 115 P.2d 59, 60 (1941). *Philbin v. Philbin,* 19 Cal.App.3d 115, 96 Cal.Rptr. 408 (1971).

■ The above list is not meant to be exclusive. The trial court may consider any other circumstances that bear on the parents' ability to provide needed support. Changes in any of the factors or circumstances mentioned above do not automatically mandate a change. Any change is a matter well within the discretion of the trial court. *E. g., Muckleroy, supra.*

*Bernalillo County Child Support Guidelines*

For a number of years the Second Judicial District judges have had a set of guidelines to assist in fixing the amount of child support. The guidelines were modified to some extent in 1977 after this case was decided. Copies of both the original guidelines and the modified guidelines were attached to the mother's Brief-in-Chief but were not properly made part of the evidence. The mother relies very heavily on these rules for her appeal here.

■ We are able to take judicial notice of a district court's rules if they are properly promulgated and filed with this Court. *Hendry v. Cartwright,* 14 N.M. 72, 88, 89 P. 309, 313 (1907). N.M.R.Civ.P. 83 [§ 21–1–1(83), N.M.S.A.1953 (Repl.1970)] requires as follows:

Each district court by action of the judge of such court or of a majority of the judges thereof, may from time to time make and amend rules governing its practice not inconsistent with these rules.

Copies of rules and amendments so made by any district court, shall, upon their promulgation be furnished to the Supreme Court of the state.

■ The power to make rules regarding practice and procedure in all the courts of this State is vested by the Constitution solely in this Supreme Court. *State v. Roy,* 40 N.M. 397, 422, 60 P.2d 646, 662 (1936). By means of Rule 83 we have delegated to the district courts the power to promulgate rules, not inconsistent with ours, regarding practice in the local courts. *Beall v. Reidy,* 80 N.M. 444, 457 P.2d 376 (1969).

■ A valid rule of a district court has the force and effect of law, the same as one published by this Court. *Hendry, supra.*

■ The rules in question here had been properly promulgated and filed. Although the mother tried to get the trial court to consider the guidelines, her efforts were in vain. The court was in error in refusing to consider the guidelines along with the other facts and circumstances bearing on the ability of the parents to furnish adequate support for the children.

The case is reversed and remanded to the district court for further action consistent with the holdings herein and for entry of appropriate findings of fact and conclusions of law.

IT IS SO ORDERED.

McMANUS, C. J., and PAYNE and FEDERICI, JJ., concur.

SOSA, J., not participating.