615 P.2d 256

Lloyd A. HURLEY, Petitioner-Appellee and Cross-Appellant,

v.

Zenobia E. HURLEY, Respondent-Appellant and Cross-Appellee.

No. 12567.

Supreme Court of New Mexico.

June 10, 1980.

Rehearing Denied Sept. 2, 1980.

Klecan & Roach, Eugene E. Klecan, Albuquerque, Bingaman, Davenport & Lovejoy, Anne K. Bingaman, Santa Fe, for respondent-appellant and cross-appellee.

Johnson & Lanphere, Nicholas R. Gentry, Albuquerque, for petitioner-appellee and cross-appellant.

## OPINION

FEDERICI, Justice.

This appeal arises out of a divorce action. On April 26, 1977, appellant-wife filed suit for divorce but later dismissed that lawsuit pursuant to a reconciliation and alleged contract. In December of that same year, appellee-husband filed suit for divorce in the District Court of Bernalillo County. In his petition, he requested: that the marriage be dissolved; that appellant be awarded custody of their minor child and that he be awarded reasonable visitation rights; that he be ordered to pay reasonable child support; and that the community property and debts of the parties be divided equitably. Appellant-wife answered and counterclaimed, seeking alimony, attorneys' fees and damages for breach of contract. Judgment was entered granting the divorce; dividing the community property; giving custody of the parties' minor child to appellant; and granting child support ($500 per month), alimony ($1,000 per month) and attorneys' fees (of $3,500). It is from this judgment that appellant appeals and appellee cross-appeals.

Appellant raises the following issues on appeal:

I.  The trial court erred in finding that there was no good will in the professional association of Schultz & Hurley.

II.  The trial court erred in determining that appellant was only entitled to a community interest in 80% of appellee's retirement benefits.

III.  The trial court erred in finding that the debt on the Tobruk stable was a community debt.

IV.  Appellant was denied a fair trial due to the trial judge's alleged prejudice against her attorney.

V.  The trial court erred in failing to find that appellant had a viable cause of action for breach of contract.

VI.  The alimony awarded by the court was so inadequate as to amount to an abuse of discretion.

VII.  The attorneys' fees awarded to appellant were so inadequate as to amount to an abuse of discretion.

We affirm the decision of the trial court with respect to Points III, IV and V. We reverse and remand for further consideration of Points I, II, VI and VII.

## I.

New Mexico has not addressed the issue of valuation of good will in a professional practice. Appellant correctly relies upon *Durio v. Johnson*, 68 N.M. 82, 358 P.2d 703 (1961), for the proposition that good will can and does exist in a professional practice even though founded upon the personal skill and reputation of an individual.

Appellee's reliance on *Muckleroy v. Muckleroy*, 84 N.M. 14, 498 P.2d 1357 (1972), for the proposition that a medical license is not community property for purposes of the community property laws of New Mexico is likewise correct. However, that case is not controlling on the issue of good will now before this Court. We believe a sound rule to apply is that although the individual right to practice is a property right which cannot be classed as community property, the value of the practice as a business at the time of dissolution of the community is community property. *In re Marriage of Lopez*, 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974); *Marriage of Lukens*, 16 Wash.App. 481, 558 P.2d 279 (1976).

Appellee urges that the saleability or lack of same is dispositive of the issue of value of good will. *See Nail v. Nail*, 486 S.W.2d 761 (Tex.1972). We agree with appellee to the limited extent that his good will may not be readily saleable; however, it does not follow that such good will is without some value.

> Accordingly, we do not think the dispositive factor is whether Dr. [Hurley] can sell his goodwill. His goodwill has value despite its immarketability, and so long as he maintains his  .  .  .  practice .  .  .  he will continue to receive a return on the goodwill associated with his name.

*Marriage of Lukens, supra,* 558 P.2d at 282.

■ The mere difficulty of valuation is not sufficient reason to ignore the existence of good will. *In re Marriage of Lopez, supra.* Once its existence and value are established, it should be included in and divided along with other community property. *See Berg v. Berg*, 72 Wash.2d 532, 434 P.2d 1 (1967).

■ There appears to be no definitive rule for the determination of the value of good will. *In re Marriage of Foster*, 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974). Each case must be determined on its own facts and circumstances. *Mueller v. Mueller*, 144 Cal.App.2d 245, 301 P.2d 90 (1956); *In re Marriage of Lopez, supra; In re Marriage of Lukens, supra.* Opinion evidence is admissible but is not conclusive. *In re Marriage of Foster, supra.* Further, since a community interest can only be acquired while the parties are married, the value must be determined at the time of dissolution without dependence upon the potential or continuing income of the professional spouse. *In re Marriage of Fortier*, 34 Cal. App.3d 384, 109 Cal.Rptr. 915 (1973). Some of the factors to be considered in arriving at the value of good will are: the length of time the professional has been practicing, his comparative success, his age and health, and any past profits of the practice. Attention should also be given to the physical and fixed resources of the practice. *In re Marriage of Lopez, supra.*

Here there was conflicting testimony on the value of Dr. Hurley's good will. Dr. Lybecap, an economist, testified on Dr. Hurley's behalf and argued that the practice had no good will due to its nonsaleability. However, the value of community good will is not necessarily the amount of money that a willing buyer would pay for such good will. *In re Marriage of Foster, supra.*

■ Mr. Zimmer testified on behalf of Mrs. Hurley. He used a capitalization of excess earnings method in determining a value for the good will of Dr. Hurley's practice. Using this method he arrived at a value. We feel that this is a legitimate, although not an exclusive, method of evaluation of community good will which should have been considered by the trial court. *In re Marriage of Foster, supra.*

## II.

■ Appellant next contends that she is entitled to a community interest in 100% of the benefits possible under appellee's retirement plan. Both parties agree that as of the date of divorce the appellee's interest was at least 80% vested and that he would become 100% vested two years after date of divorce. Appellee's witness testified that the value of an 80% vested interest was $89,360.75. Once the interest becomes 100% vested, Dr. Hurley will be entitled to approximately $111,000 in benefits. Appel-

lant maintains that she is entitled to that portion of retirement pay which was earned during coverture. *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969). She alleges that appellant had contributed $111,000 in cash to the plan as of the date of divorce, and that she is entitled to one-half of such amount, regardless of whether it was technically "vested" on the date of divorce.

In *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), this Court held that a spouse is entitled to a community share of that portion of state retirement which is vested but unmatured as of the date of divorce. In *Ridgway v. Ridgway*, 19 N.M.St.B.Bull. 455, 94 N.M. 345, 610 P.2d 749 (1980), we set forth alternate methods of valuation which may be applied by the trial court in determining the community interest, and methods of payment in private pension plans.

The record in this case indicates that the plan is 100% vested, but only 80% matured. The trial court did not have sufficient evidence before it to make a determination of the percentage of the pension to which appellant is entitled, nor the proper method of payment to adopt under the circumstances. The district court is reversed and directed to hear additional evidence and to place a community value on the plan, together with an appropriate method of payment, based upon the principles of law announced in this opinion, and in *LeClert, Copeland* and *Ridgway, supra.*

### III.

█ Appellant next challenges the court's finding that the Tobruk property is community property and that the mortgage on that property is a community debt. Appellant correctly cites *McElyea v. McElyea*, 49 N.M. 322, 163 P.2d 635 (1945), for the proposition that the status of property is fixed by law as of the time of its acquisition until changed in a manner authorized by law. She urges that the finding of the trial court that this property was community, despite language indicating otherwise on the warranty deed, is correct, since the parties were still married at the time of its acquisition, and the closing costs and some monthly payments were made out of community funds. However, she further contends that due to the unilateral action of appellee in purchasing the property without her knowledge and attempting to take title in his name only, the mortgage on the property should be classified as his separate debt. We find neither statutory nor case law to support her position. We find that the decision of the trial court is correct and supported by substantial evidence.

### IV.

█ Appellant contends that she was denied a fair trial due to an alleged lack of impartiality on the part of the trial judge. She bases this contention upon the fact that four months after entry of judgment in this case the trial judge recused himself from all proceedings in which her attorney may be involved. We find no evidence in the record which would support a conclusion that the trial court had been biased or prejudiced toward appellant.

### V.

Appellant next contends that in return for her forbearance from prosecution of a divorce action in April of 1977, appellee promised to refrain from infidelity, be a faithful and providing husband and submit to counseling. She contends that these promises exceeded the scope of any existing marital obligations and that appellee's failure to keep these promises constituted a breach of contract for which she is entitled to damages.

█ We have no quarrel with appellant's statement of the principle that forbearance from suit is adequate consideration for a contract. However, a promise to do what a party is already obligated by contract or law to do is not sufficient consideration for a promise made in return. *See Hale v. Brewster*, 81 N.M. 342, 467 P.2d 8 (1970). In the instant case, appellee promised to do no more than what he was already obligated to do as a husband. There was no mutuality of contract and

therefore no breach. Further, we note that such promises are prohibited by Section 40–2–8, N.M.S.A.1978. This Court has previously held that nuptial contracts which attempt to alter the legal relations of the parties "are generally held to be void for want of consideration, or against public policy." *Tellez v. Tellez,* 51 N.M. 416, 420, 186 P.2d 390, 393 (1947). *See In Matter of Estate of Lord,* 93 N.M. 543, 602 P.2d 1030 (1979). It is the policy of this State to foster and protect the marital institution. *Id.* at 544, 602 P.2d at 1031.

## VI.

Appellant contends that the award of alimony to her was so inadequate as to constitute an abuse of discretion; further, that the court erred in failing to award her alimony in excess of $25,000 per year and lump sum alimony which would include the family residence.

An award of alimony is a matter which rests within the sound discretion of the trial court. *Burnside v. Burnside,* 85 N.M. 517, 514 P.2d 36 (1973); *Muckleroy v. Muckleroy, supra;* Section 40–4–7(B)(1), N.M.S.A.1978. The statute provides and this Court has established a number of factors to be considered in determining the amount of alimony to be granted. Among those factors are:

> [T]he needs of the wife, her age, health and the means to support herself, the earning capacity and the future earnings of the husband, the duration of the marriage, and the amount of property owned by the parties.

*Michelson v. Michelson,* 86 N.M. 107, 110, 520 P.2d 263, 266 (1974).

In the present case, appellant, at the time of trial, was 49 years of age, had been married to appellee for 25 years, had raised five of their children and had an earning capacity of approximately $15,000 per year. Appellee, on the other hand, has an earning capacity of approximately $121,-000 per year.

In *Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976), we indicated that "alimony is intended as a method of fulfilling the husband's obligation to provide the support needed by the wife in accordance with the husband's ability to pay." *Id.* at 289, 551 P.2d at 645. Given the gross disparity in earnings and earning capacity, we feel that an award of $1,000 per month was insufficient to permit appellant to maintain the family home for herself and her children in a manner to which she and the children were accustomed. *Gramme v. Gramme,* 587 P.2d 144 (Utah 1978). *See Spingola v. Spingola,* 91 N.M. 737, 580 P.2d 958 (1978). The property which appellant received was not liquid. Appellant should not be required to sell her share of the community property in order to supplement the amount allowed her by way of alimony to meet the daily living expenses of herself and her children. We note that even appellee testified that he felt that $1,400 per month, plus paying the house mortgage, car payments and car insurance was "pretty fair".

The judgment of the trial court with respect to the award of alimony is reversed and remanded for further consideration.

## VII.

Appellant lastly contends that the award of $3,500 to her for attorneys' fees was so inadequate as to amount to an abuse of discretion. Such an award has generally been held to rest within the sound discretion of the trial court. *Seymour v. Seymour,* 89 N.M. 752, 557 P.2d 1101 (1976); *Burnside v. Burnside,* 85 N.M. 517, 514 P.2d 36 (1973). However, this discretion is not unchecked and must have been exercised with the purpose in mind of insuring the plaintiff an efficient preparation and presentation of her case. *Burnside v. Burnside, supra.*

We have indicated previously in *Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976), some of the factors which should have been considered in awarding attorney fees:

> [N]ot the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character

of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom.

*Id.* at 289–290, 551 P.2d at 645–646.

■ The trial court's award of $3,500 in attorneys' fees did not properly take into account the ability of appellant's lawyers, the complexity of the issues involved, the large amounts of money and property involved, the importance of this litigation to the parties nor the benefits to be derived therefrom. The issues concerning the property division in this case were extensively litigated at trial and on appeal. The issues involved were numerous and complex, as this opinion in some measure reflects. An examination of the transcript and record is indicative of the effort, time and expense put into this case.

Appellant has submitted an itemized accounting of approximately $10,796.23 in uncompensated attorneys' fees alone. This figure does not include an additional $3,129.99 in other fees encumbered in trying this case. In view of these amounts, we find the decision of the trial court to be so inadequate as to amount to an abuse of discretion. Therefore, the decision of the trial court with respect to this issue is reversed and remanded for further consideration.

Appellant lastly requests that she be awarded attorneys' fees for the prosecution of this appeal. Given the number of issues involved, the complexity of such issues and the disparity in earning capacity of the parties, appellant is hereby granted $2,500 in attorneys' fees for the prosecution of this appeal. Given the number of issues involved, the complexity of such issues and the disparity in earning capacity of the parties, appellant is hereby granted $2,500 in attorneys' fees for the prosecution of this appeal. The costs of this appeal are to be equally divided between the parties.

■ On motion for rehearing, we note that appellee cross-appellant has raised an issue on cross-appeal which requires consideration. We have granted the motion. The trial court found that "Each party is entitled to one-half of the value of all paint-ings, rugs and other items belonging to the parties at Schultz & Hurley, P.A., valued at $29,170. . . . ." Appellee cross-appellant contends that there is no evidence before the court showing that this property is owned in its entirety by the parties as community property. Appellee cross-appellant further contends that the paintings at Schultz & Hurley, P.A. were already included in the value of the community property when the trial court found that "Each party is entitled to one-half of the 4.38% interest in the stock in Encino Medical Building, Inc., valued at $18,083.00."

■ There is substantial evidence in the record to support a finding by the trial court that the paintings, rugs and other items have a value of $29,170, and we affirm this finding. However, the evidence in the record concerning the ownership interest of the parties in the paintings, rugs and other items and whether they were counted twice, is so conflicting, that we cannot determine from the record whether these issues were properly resolved by the trial court. These issues are remanded to the trial court so that it may determine:

(1) Whether the paintings, valued at $29,170, were owned in their entirety by the parties; and

(2) Whether the value of the paintings was included twice in totalling the property owned by the parties.

After making these determinations, the trial court should make an appropriate division of the parties' community interest in the paintings, rugs and other items belonging to the parties at Schultz & Hurley, P.A.

This case is remanded to the trial court for further proceedings: to determine the value of the community goodwill in the professional practice; the value and amount of community contributions to appellee's retirement plan; the appropriate division and interest of the parties' community interest in the paintings, rugs and other items belonging to the parties at Schultz & Hurley, P.A.; the amount of alimony; and the amount of attorneys' fees to be awarded

appellant, consistent with the views expressed herein.

IT IS SO ORDERED.

SOSA, C. J., and FELTER, J., concur.