871 P.2d 390

**Caroline ROBERTS, f/k/a Caroline Wright, Petitioner–Appellee,**

v.

**Randy R. WRIGHT, Respondent–Appellant.**

**No. 14406.**

Court of Appeals of New Mexico.

Feb. 3, 1994.

Barbara L. Shapiro, Albuquerque, for petitioner-appellee.

Elizabeth Losee, Albuquerque, for respondent-appellant.

## OPINION

CHAVEZ, Judge.

Father appeals from a trial court order requiring Mother to pay Father $350 per month in child support. We note that Father and Mother entered into a settlement agreement that reflected their binding resolution of all issues other than the determination of child support and attorney fees related to child support. On appeal, Father raises three issues. He argues that the trial court erred in setting the support amount, erred in commencing the support obligation at the date of hearing on support rather than the date of the divorce, and erred in awarding Mother attorney fees. We hold that the trial court properly refused to consider Mother's corporate earnings as part of her gross income in setting the support amount, that the trial court was within its discretion in commencing the support obligation on the date of hearing, and that the trial court failed to make sufficient findings to support its award of attorney fees. Accordingly, we affirm the trial court's judgment as to the first two issues and reverse and remand the issue regarding attorney fees.

## I. CHILD SUPPORT

Father makes several challenges to the level of child support the trial court established. The facts related to the child support issue are that the parties separated in January 1991 and have joint legal and physical custody of two children. They share time with the children on a 50/50 basis, and this arrangement has been in effect since their separation. While married, the parties were in business selling computer hardware and software. It is undisputed that the business was Mother's sole and separate property. From 1987 through 1990 the business either lost money or earned very little. However, due to a contract with a large federal entity, the business had gross earnings of $330,750 in 1991.

Mother's 1991 personal income, excluding the 1991 corporate earnings, was over $72,000. This figure included interest and dividend income from sources other than the business. Father does not dispute that the $56,230 Mother paid herself from the business was a reasonable salary for the work she did. Father made just under $31,000 for 1991.

For the purpose of determining child support, the trial court did not include the $330,750 that Mother's business earned in 1991 as part of her income. The court found that the government entity contracting with the business required quick responses on purchase orders, which, in turn, required the business to have the necessary items on hand. Mother dealt with this requirement by purchasing and retaining a large inventory. Finally, there were findings that Mother's business was in a highly competitive market with declining profits and that maintenance of the government contract was essential to the success of the business. If Mother paid herself the $330,750, she would not have been able to maintain the government contract. The trial court found that Mother reinvested the income back into the business by purchasing substantial inventory and that the decision to reinvest that money was based on sound business practice.

### A. Inclusion of the 1991 Corporate Earnings

■ The trial court was bound to apply the child support guidelines in NMSA 1978, Section 40–4–11.1 (Cum.Supp.1992), to determine the presumptive level of support each party would pay. *See Perkins v. Rowson,* 110 N.M. 671, 674, 798 P.2d 1057, 1060 (Ct. App.), *cert. denied,* 110 N.M. 641, 798 P.2d 591 (1990). Father's initial argument regarding the trial court's application of Section 40–4–11.1 is that the court erred by refusing to include the 1991 corporate earnings as part of Mother's gross income.

Section 40–4–11.1(B) states in part that the purposes of the child support guidelines are to "(1) establish as state policy an adequate standard of support for children, subject to the ability of parents to pay; [and] (2) make awards more equitable by ensuring more consistent treatment of persons in similar circumstances. . . ." However, "a substantial hardship in the obligor, obligee or subject children may justify a deviation upward or downward from the amount that would otherwise be payable under the guidelines." NMSA 1978, Section 40–4–11.2 (Repl. Pamp.1989). In fulfillment of the purposes of the guidelines, "income" is defined as the "*actual gross income* of a parent if employed to full capacity or potential income if unemployed or under employed." Section 40–4–11.1(C)(1) (emphasis added). The Legislature has defined the gross income of a closely-held business as the "gross receipts minus ordinary and necessary expenses required to produce such income, but ordinary and necessary expenses do not include expenses determined by the court to be inappropriate for purposes of calculating child support. . . ." Section 40–4–11.1(C)(2)(b). Thus, the question is whether Mother's reinvestment was an ordinary and necessary expense required to produce business income for purposes of Section 40–4–11.1(C). Absent an abuse of discretion, we affirm.

Father does not express it as such, but his analysis imports federal tax principles into the child support guidelines. Father's interpretation of what are ordinary and necessary expenses is a technical one used in connection with figuring deductions from federal corporate income tax. He, in effect, urges us to consider Mother's reinvestment to be a capital cost, instead of an ordinary and necessary expense because it is not so ordinary. *See generally Commissioner of Internal Revenue v. Lincoln Sav. & Loan Ass'n,* 403 U.S. 345, 353–54, 91 S.Ct. 1893, 1898–99, 29 L.Ed.2d 519 (1971) (explaining the difference between ordinary and necessary expenses, which are deductible from income for federal tax purposes, and capital costs, which are not deductible).

■ While the trial court may consider the tax treatment of expenses claimed by a parent as "ordinary and necessary," the trial court is not limited to the tax treatment of a particular expense. *In re Marriage of Sullivan,* 243 Mont. 292, 794 P.2d 687, 689 (1990); *Nelson v. Nelson,* 454 N.W.2d 533, 535 (S.D. 1990). The parent claiming a business expense must show not only that it is ordinary and necessary to the business, but also that it is irrelevant to calculating support obligations. *Rimkus v. Rimkus,* 199 Ill.App.3d 903, 145 Ill.Dec. 868, 873, 557 N.E.2d 638, 643 (1990); Helen Donigan, *Calculating and Documenting Child Support Awards Under Washington Law,* 26 Gonz.L.Rev. 13, 37 (1991). For example, business expenses that are valid for accounting or tax purposes may not affect a parent's actual cash flow, so they would normally not be considered ordinary and necessary for purposes of calculating support. *See, e.g., In re Marriage of Lefler,* 185 Ill.App.3d 677, 134 Ill.Dec. 1, 5, 542 N.E.2d 1, 5 (1988); *Stewart v. Stewart,* 243 Mont. 180, 793 P.2d 813, 815 (1990). The statutory language, then, grants the trial court some discretion in allowing a deduction for ordinary and necessary business expenses. *Cf. Kennedy v. Kennedy,* 107 N.C.App. 695, 421 S.E.2d 795, 798 (1992) (guidelines vest trial court with discretion to disallow deduction of business expenses inappropriate for the purpose of calculating child support).

The evidence was that the purchase of inventory was reasonably necessary to sustain the one contract that made Mother's business successful. Also, the evidence was that the purchase, though unprecedented in the history of Mother's business, was in fur-

therance of the central objective of the business, i.e., the continuing profitable sale of computer hardware and software. Thus, the findings support the judgment and are not an abuse of discretion.

Father next argues that the trial court's reading of the term "ordinary and necessary expenses," would effectively require him to demonstrate fraud. He states this holding inappropriately adds a requirement onto existing legislation. *See State ex rel. Barela v. New Mexico State Bd. of Educ.*, 80 N.M. 220, 222, 453 P.2d 583, 585 (1969). He also argues the requirement of showing fraud would be contrary to the support guidelines policy of promoting efficient establishment of support levels. *See* § 40–4–11.1(B)(3). We disagree.

■ When the trial court interpreted the support guidelines as requiring Father to show fraud, the court erred. However, on the evidence produced, the error was not reversible. As we have stated, if there is a disagreement about the appropriateness of the deduction, then the deduction must be justified by the party claiming the expense. Donigan, *supra* at 37; *Coffey v. Coffey*, 394 Pa.Super. 194, 575 A.2d 587, 590 (1990). An expense can be found inappropriate without making the specific findings necessary to support a fraud claim. *Cf. In re Marriage of Dwan*, 108 Ill.App.3d 808, 64 Ill.Dec. 340, 343–44, 439 N.E.2d 1005, 1008–09 (1982) (denial of "business" travel and roommate's living expenses). The 1991 corporate earnings were necessary to maintain Mother's business. Consequently, Mother justified the appropriateness of excluding her 1991 corporate earnings.

■ To the extent Father makes a substantial evidence challenge to the trial court's calculations, the challenge must fail. The trial court used these figures to explore the reasonableness of various support amounts. Other findings of ultimate fact support the trial court's judgment. For instance, the court found facts related to the amount of time each party would have custody of the children and the basis of the Mother's corporate earnings. Yet, aside from the argument that we resolved above regarding inclusion of corporate earnings, Father does not directly challenge the ultimate findings supporting the judgment. We accept those findings as fact on appeal. *See Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). As there were ultimate findings sufficient to support the judgment, the evidentiary findings exploring the limits of reasonableness of various support amounts are unnecessary. We do not review the sufficiency of evidence supporting unnecessary findings. *See Holloway v. New Mexico Office Furniture*, 99 N.M. 525, 527, 660 P.2d 615, 617 (Ct.App. 1983); *cf. Wright v. Brem*, 81 N.M. 410, 411, 467 P.2d 736, 737 (Ct.App.1970) (error will not be corrected if correction will not change the result).

### B. Emphasis on the Parties' Past Lifestyles

■ *Spingola v. Spingola*, 91 N.M. 737, 743, 580 P.2d 958, 964 (1978), states that a trial court must consider "what life-style the children would be enjoying if the father and mother were not divorced." Father reads this language to say trial courts may only consider how the children would have lived in the future but for the divorce. According to his theory, consideration of past life-styles is inappropriate. We disagree; past status may provide probative evidence about the likelihood of future status. *Heggen v. Heggen*, 452 N.W.2d 96, 102 (N.D.1990). We hold there was no error in the trial court's consideration of the children's past life-style to assess the fairness of the support award.

### C. Liquidation of Mother's Securities Accounts

■ Mother's income from interest and dividends comes from several securities accounts. Father does not dispute that creditors have secured interests in two of these accounts so Mother cannot liquidate them to support her children. However, there is another account with roughly $29,000 in securities that remains unencumbered. Father argues the trial court abused its discretion in failing to force Mother to liquidate the unencumbered account to benefit the children. He cites to *Blake v. Blake*, 102 N.M. 354, 362–63, 695 P.2d 838, 846–47 (Ct.App.1985), for the proposition that liquidation of assets

can be required for the provision of support for children.

Father apparently urges us to require Mother to liquidate her securities and pay some share of the proceeds as support. In *Blake* the parties liquidated equal shares of assets to create a trust fund that would yield income for the children. Here, the trial court considered the income Mother's securities account was already producing in the way of dividends and interest as part of her gross income. To liquidate that account would mean that it would no longer produce income and dividends to assist Mother in supporting her children. In light of this consideration, we cannot say the trial court abused its discretion in refusing to require Mother to liquidate the account. *See Spingola*, 91 N.M. at 742, 580 P.2d at 963.

### D. Failure to Adopt a Material Finding

■ Father tendered a finding regarding Mother's net worth. The trial court refused the finding and Father assigns error to the refusal. He cites to various items of evidence of Mother's net worth to support the finding. He argues the trial court's error is in failing to consider Mother's net worth because a trial court must consider what the children's life-style would have been but for the divorce. *See id.* at 743, 580 P.2d at 964.

The award of joint custody of children does not imply equal division of financial responsibility, but rather the support award may take into consideration differences in the financial resources of the parents, the needs of the children, and the unique facts of each case. *DeTevis v. Aragon*, 104 N.M. 793, 800, 727 P.2d 558, 565 (Ct.App.1986). The trial court did not need to make a particular finding regarding Mother's net worth in light of the thorough examination of all relevant circumstances of the children's life-style but for the divorce. We will infer from the court's findings that it ordered Mother to pay support based in part on her net worth. *See Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991) ("If, from the facts found, the other necessary facts may be reasonably inferred, the judgment will not be disturbed."). There is no reversible error in the trial court's refusal to adopt a specific finding regarding Mother's net worth.

### E. Contradictory Findings and Failure to Include Guideline Worksheet

■ Father contends the trial court's support order is reversible because the court made contradictory findings and conclusions. The findings to which Father refers are findings we have already mentioned; they are a series of calculations of support amounts the court made using various assumptions about the parents' income. The findings indicate that under the guidelines Mother's presumptively correct support amount should be somewhere between $380 to $606 per month. The court then concluded Mother's support obligation should be $350 per month considering that she was already paying $174 per month for the children's medical insurance. Father argues these findings and the conclusion that follows from them are hopelessly inconsistent such that we are unable to review them. We disagree.

We can review the judgment because the trial court patently rejected the various scenarios presented and accepted one clear view of the evidence. We have already determined that the trial court's refusal to include the 1991 corporate earnings in Mother's income for support purposes was proper. Beyond that, Father does not contend the trial court relied on inaccurate assumptions when it based its finding on Mother's income of roughly $72,000 per year and Father's income of $31,000 or, alternatively, $27,000 as a forecasted 1992 income. Calculating those figures into guideline worksheet B, we conclude that the trial court's resulting range of appropriate support, from $380 to $422 per month, does not indicate an abuse of discretion. Father does not challenge the conclusion that he should pay his percentage share of the children's medical insurance premium, approximately $47 to $52. If we subtract that obligation from Mother's monthly obligation, the difference makes a range of support from $328 to $375 per month.

The district court's conclusion that $350 per month is appropriate support finds support in unchallenged findings and conclusions or in challenged findings that are supported

by the evidence the court considered. We must indulge all inferences to reconcile seemingly inconsistent findings and conclusions in order to support a judgment. *See Ledbetter v. Webb,* 103 N.M. 597, 602, 711 P.2d 874, 879 (1985). Read in the way that we have done above, the findings are reconcilable and support the judgment.

■ We agree the trial court should have included a support worksheet in the record. *See* NMSA 1978, § 40–4–11.6 (Cum.Supp. 1992). However, Father does not explain how he alerted the trial court to that requirement. Absent a request to the trial court that it include a worksheet, Father failed to preserve this error for review. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496–97, 745 P.2d 717, 721–22 (Ct.App.1987). Moreover, as we have demonstrated above, though the trial court did not include a copy of the worksheet for our review, there was enough information in the findings and conclusions to allow us to undertake a meaningful review. Because there is substantial evidence to support the judgment and Father failed to preserve error, we conclude there was no reversible error.

## II. DATE OF COMMENCEMENT OF SUPPORT PAYMENTS

■ Father's final challenge to the support order is the date of its commencement. The trial court commenced Mother's support obligation as of the date of the hearing granting Father's support payments. Father contends that the trial court should have commenced the support payments retroactive to the date the trial court entered a decree of divorce. *Cf. Montoya v. Montoya,* 95 N.M. 189, 190, 619 P.2d 1233, 1234 (1980) (the applicable date for modification of child support payments is the date of filing the petition or pleading rather than the date of the hearing).

By the terms of the settlement agreement, Mother assumed many of the financial obligations for the children between the time of separation and the final order. During this time, Mother paid the medical insurance premium, out-of-pocket medical and dental expenses, therapy for the children, and summer camp. However, Father asserts that the court erred by allowing the terms of the settlement agreement to influence its decision regarding the commencement of child support.

We disagree. Our Supreme Court has stated that, "[t]he awarding of child support rests within the sound discretion of the court." *Spingola,* 91 N.M. at 742, 580 P.2d at 963. In this case, there is no question that it was well within the court's discretion, when Mother was paying the greater amount of the children's expenses and the property had not been divided, to refuse to make the support payments retroactive to the date of the divorce decree. *DeTevis,* 104 N.M. at 801, 727 P.2d at 566. As a result, we affirm the trial court's ruling on this issue.

## III. ATTORNEY FEES

■ Father's final challenge to the judgment is the trial court's order that he pay Mother's attorney fees for prosecution of this action. Father argues that the trial court's findings and conclusions and order awarding attorney fees and costs are devoid of findings necessary to support Mother's award of attorney fees. Mother argues that Father waived his challenge by failing to tender specific findings or generally ask for findings regarding the attorney fees issue. SCRA 1986, 1–052(B)(1)(f) (Repl.1992). We hold that Father did not waive his challenge to the attorney fees issue and that the trial court failed to make adequate findings to support its award.

■ In its final order and judgement the trial court stated, "The court reserves jurisdiction to decide the issue of attorneys' fees related to the child support issue. The parties shall submit their respective Attorneys' Fee Affidavits to this Court ten days after the date of the filing of this Final Order and Judgment." In fact, both parties submitted affidavits regarding their respective attorney fees. The district court's judgment and the parties' submission of affidavits pursuant to the judgment indicates the issue of attorney fees was called to the attention of the trial court and is sufficient to invoke our review. *See Martinez v. Martinez,* 101 N.M. 88, 93, 678 P.2d 1163, 1168 (1984).

In *Foutz v. Foutz*, 110 N.M. 642, 798 P.2d 592 (Ct.App.1990), the court made clear that the discretion of the trial court to award attorney fees is not unrestrained. The trial court must consider the purpose of awarding fees, as well as the relative financial status of the parties and their ability to pay. *Id.* In this case, the parties submitted affidavits regarding their attorney fees which outlined the services rendered by the attorneys and the amount of time expended in performing these services. However, the affidavits fail to apprise the trial court of the above mentioned considerations. Thus, since the court made no findings and its order does not explain why the award of attorney fees was made, we cannot determine the basis of the trial court's decision and that he exercised his discretion " 'with the purpose in mind of insuring the plaintiff an efficient preparation and presentation of her case.' " *Id.* at 644, 798 P.2d at 594 (quoting *Burnside v. Burnside*, 85 N.M. 517, 521, 514 P.2d 36, 40 (1973)). For this reason, we reverse and remand this issue to the trial court to make findings in accordance with the guidelines provided in *Foutz*.

## IV. CONCLUSION

Father's challenge to the level of child support the trial court ordered fails because, under the facts of this case, there was no abuse of discretion in the trial court's refusal to consider Mother's corporate earnings as part of her gross income. There is no merit to his other challenges to the level of support. The basis of Father's argument that the parties agreed to have Mother pay support plus many of the children's other expenses is belied by the Settlement Agreement. Finally, the trial court's award of attorney fees is reversed and remanded to the trial court. Mother's request for attorney fees on appeal is denied.

**IT IS SO ORDERED.**

MINZNER, C.J., and BLACK, J., concur.