862 P.2d 1257

**Diane PADILLA and Victoria Ann Madrid, Petitioners–Appellants,**

v.

**Louis MONTANO, Respondent–Appellee.**

No. 13768.

Court of Appeals of New Mexico.

Sept. 29, 1993.

H.R. Quintero, Robinson & Quintero, P.C., Silver City, for petitioners-appellants.

Claudia L. Ray, Gallup, for respondent-appellee.

## OPINION

ALARID, Judge.

Father's motion for rehearing is denied. However, on the Court's own motion, the opinion filed on July 21, 1993, is hereby withdrawn and the following substituted in its place.

Mother and Child appeal from the judgment and order which awarded them a portion of the past child support which they requested. On appeal, they raise the following issues: 1) whether the trial court erred in applying the general "catch-all" four-year statute of limitations, NMSA 1978, Section 37–1–4 (Repl.Pamp.1990), to their cause of action for past child support; 2) whether the trial court's interpretation of the paternity statute, NMSA 1978, Section 40–11–23 (Repl.Pamp.1989), is contrary to public policy and leads to the unjust enrichment of Father; 3) whether it was contrary to law and an abuse of discretion for the trial court to refuse to allow evidence pertaining to Father's wealth in determining what amount of past child support he owed; and 4) whether it was contrary to law and an abuse of discretion for the trial court to refuse to award Mother prejudgment interest. We affirm in part and reverse in part.

FACTS

In 1969, Padilla (Mother) and Montano (Father) met and began a relationship which resulted in Mother becoming pregnant. Shortly thereafter, Mother informed Father of her pregnancy and Father gave her some money. Mother stated the money was for an abortion, but Father stated that he did not believe the unborn child was his and that the money was for her to travel to Colorado.

After the birth of Child, Mother took her to see Father on at least two separate occasions. Also, on at least two occasions, Father sent Child money. However, apparently during all the time Child was growing up, Mother never asked Father for child support.

In 1990, Mother filed a complaint to establish paternity in Father and, once that was established, for past and future child support. Later that same year, an amended complaint was filed, which added Child as a party to the action. Having been born in 1969, Child had reached the age of majority. Father eventually admitted paternity.

During the trial to determine child support, Mother testified that she incurred close to $5,000 in reasonable and necessary birthing, medical, and dental expenses for Child. Apparently, the evidence was undisputed that during Child's minority, Father had substantial income and steadily increased his assets through work and investments. However, the trial court refused to allow evidence of the extent of Father's assets and instead ruled that such evidence was irrelevant to the question of the appropriate amount of support, and that all that was relevant was Father's income.

Mother's expert witness testified that Father's past child support obligations during Child's minority totaled over $62,000 without interest, and over $131,000 with interest. These totals were arrived at by relying on both the pre- and post-1986 child support guidelines. Father's expert witness testified that Father's past child support would have totaled no more than $28,000.

The trial court entered a conclusion of law providing that the Uniform Parentage Act (the Act), NMSA 1978, Sections 40–11–1 to –23 (Repl.Pamp.1989), was applicable to, and controlling in, this action. The trial court also concluded that the Act distinguished between an action to establish parentage and an action for support.

The trial court further found and concluded that the applicable statute of limitations for determining paternity was three years after the child reaches the age of majority, or Section 40–11–23 of the Act. It further found that the applicable statute of limitations for filing an action for past child support was four years, in accordance with Section 37–1–4, which applies to ac-

tions on accounts and unwritten contracts; injuries to property; conversions; fraud; and unspecified actions. A finding of fact was entered stating that this four-year statute of limitations was tolled during Child's minority, from December 15, 1969 (date of birth), to December 15, 1987 (date Child reached age of majority).

The trial court concluded that NMSA 1978, Section 37–1–10 (Repl.Pamp.1990), provided that the time for bringing actions in favor of minors is extended such that a child has one year from the termination of his or her minority within which to commence the action. It further concluded that Child was barred from collecting any past child support, based on her failure to file her action within one year of having reached the age of majority on December 15, 1987, since her action was not filed until March 14, 1990.

Applying the four-year statute of limitations, the trial court concluded that Mother's cause of action for past child support was barred for all support accruing before March 14, 1986. The trial court also concluded that Mother was entitled to past child support from March 14, 1986, through February 17, 1987, totaling over $15,000. Finally, the trial court concluded that Mother was not entitled to prejudgment interest because the amounts to which she was entitled were not liquidated, certain, or a definite sum of money. Mother and Child appealed.

DISCUSSION

I. Whether the Trial Court Erred in Applying the General Statute of Limitations, Section 37–1–4

■ The facts of this case are unique in that Child was no longer a minor at the time she and Mother filed their cause of action for paternity and support. Consequently, all of the relief requested by Mother and Child necessarily will be in the form of past child support. Another distinguishing feature of this case is the trial court's application of two different statutes of limitations to the cause of action. A review of other jurisdictions which have also adopted the Uniform Parentage Act reveals that statutes of limitations in pater-

nity and child support cases are dealt with by the courts as essentially one issue. *See, e.g., J.E.S. v. F.F.,* 762 P.2d 703 (Col.Ct. App.1988); *Williams v. State,* 504 So.2d 282 (Ala.Civ.App.1986); *Nettles v. Beckley,* 32 Wash.App. 606, 648 P.2d 508 (1982). In other words, the issue in these types of cases is whether the plaintiff, be it the child, the mother, or the state, timely commenced the cause of action under the terms of § 7 of the Uniform Act, NMSA 1978, § 40–11–23 (1989 Repl.Pamp.). The question in this case, then, is whether the limitations period under the Act covers only the determination of paternity or applies to the petition seeking past child support.

A. *Statutes of limitations in paternity and support actions in general*

■ One of the main purposes of paternity proceedings is to provide support for the child. Harry D. Krause, *Bringing the Bastard into the Great Society—A Proposed Uniform Act on Legitimacy,* 44 Texas L.Rev. 829, 850 (1966); *see also* Robert A. Brazener, Annotation, *Statute of Limitations in Illegitimacy or Bastardy Proceedings,* 59 A.L.R.3d 685, 691 (1974). Generally, if an action is to establish paternity, courts have usually held that the cause of action accrues at the time of the child's birth, and for actions to obtain child support, the cause accrues at the time the father fails to provide support. *Id.* at 694.

With respect to the question of whether "catch-all" statutes of limitations can be applied to paternity proceedings, some courts have reasoned that the continuing duty of a father to support his child would be defeated by permitting the application of a general statute of limitations. *Id.* at 693. Some states, which do not have a particular statute of limitations relating to paternity and support proceedings, have instead attempted to apply a general limitations period for actions for penalties and forfeitures. *Id.* at 714. However, courts have rejected this approach by reasoning that such limitations period should not be applied to actions for the maintenance and support of a minor child. *Id.* The general rationale behind this rejection is that a

father has a continuing duty to support his minor child and no general limitations period should be applied where the result might be that a child is denied support from the child's putative father. *Id.* at 718; *see also* Deborah J. Venezia, *The Rights of an Illegitimate Child Post–Gomez v. Perez: A Legitimate Situation?*, 12 St. Mary's L.J. 199, 205 (1980).

In New Mexico, the Act provides a specific statute of limitations for determining a parent and child relationship. However, the question in this case is whether that limitations period covers only the determination of paternity and not the seeking of past support.

*Stringer v. Dudoich*, 92 N.M. 98, 583 P.2d 462 (1978), is the New Mexico case which deals with a statute of limitations issue in the paternity and support context. In *Stringer*, the mother brought a paternity cause of action against the putative father, and the child, through the guardian ad litem, also alleged paternity and sought child support. Summary judgment was granted for the father on both counts. The Supreme Court held that illegitimate children are entitled to the same support rights as legitimate children. *Id.* at 99, 583 P.2d at 463. The statute of limitations applicable in *Stringer* was NMSA 1953, Section 22–4–24 (Supp.1975), which provided in part that proceedings to enforce a father's obligation shall not be brought after the lapse of more than two years from the child's birth. *Id.* at 99, 583 P.2d at 463. The Court affirmed the summary judgment with respect to the mother, but reversed with respect to the child's claim. *Id.* Since the child was five years old at the time the mother instituted her suit, the Court determined that the father prevailed as a matter of law with respect to the mother's claim. *Id.; see* § 22–4–24. However, the Court determined that the two-year statute of limitations did not bar the child from bringing such an action beyond her second birthday. *Id.* at 100, 583 P.2d at 464. In reaching this decision, the Court noted that there was no time limitation whatsoever for legitimate children to seek support from their fathers. *Id.* Then, the Court relied on

United States Supreme Court case law, which provided that the equal protection clause prohibits a state from granting a right to legitimate children and withholding the same right from illegitimate children. Therefore, the Court held that Section 22–4–24 was unconstitutional to the extent that it limited the right of illegitimate children to seek a determination of paternity and support. *Id.*

### B. *Specific arguments presented by the parties on Issue I*

Mother's basic argument is that Section 40–11–23(A) is the applicable statute of limitations for both actions to establish paternity and actions to secure a judgment for past support. She raises this first issue as one of fundamental error.

Mother first argues that the trial court erred in sua sponte applying Section 37–1–4 because the statute of limitations is an affirmative defense which must be specifically pled or it is waived. *See generally Keeter v. Board of County Comm'rs*, 67 N.M. 201, 354 P.2d 135 (1960). Specifically, she alleges error in the trial court's sua sponte application of Section 37–1–4 when Father never pled, presented evidence or argument, or requested a finding of fact dealing with that statutory provision. We do not agree that Father's failure to specifically argue for the application of Section 37–1–4 requires reversal of this appeal. Despite the fact Father failed to argue for the specific application of that statute, he did argue for the application of the prior Bastardy Statute, which was declared to be unconstitutional in *Stringer.* Therefore, he did specifically present a statute of limitations defense.

Mother relies on *Manley v. Howard*, 25 Ohio App.3d 1, 495 N.E.2d 436 (1985), as support for her argument that the trial court's sua sponte application of Section 37–1–4 was error. In *Manley*, the trial court, in a paternity and support cause of action, applied an old statute of limitations despite the fact that the Ohio legislature had enacted its version of the Act and made it specifically applicable to cases arising prior to the Act's effective date. The

appellate court held that even though the trial court erred, there was no prejudice because the issues were fully resolved in the child's case as opposed to the mother's case. Mother's reliance on this case is unpersuasive, based on its distinguishing features. For instance, in *Manley*, unlike the case at hand, the father never raised the statute of limitations as an affirmative defense and so the trial court truly did raise the issue sua sponte. As noted earlier in this appeal, Father did present a statute of limitations argument.

Mother next argues that the trial court erred in applying the general statute of limitations, Section 37-1-4, because such action is contrary to the well-established proposition that statutes dealing with a particular subject matter supersede a general statute which does not refer to the specific subject. Mother argues that Sections 40-11-23 and 40-11-15 are specific statutes dealing with the limitations of actions for parentage and support, and, therefore, they govern this action. In response, Father argues that the Act clearly distinguishes between actions for the determination of paternity and actions for support. Father also argues that while the Act specifically contains a limitations period for paternity actions, it is silent on actions for support. Based on that, he concludes that the general statute of limitations, Section 37-1-4, applies.

Finally, Mother argues that the trial court's interpretation of the Act is unreasonable and contrary to legislative intent. Part of this argument is based on the fact that Section 40-11-8 states that an action brought under the Act may also be joined with an action for support. Mother further argues that the application of a general statute of limitations works against the policy of providing children with the longest possible statute of limitations period for matters dealing with support. She also argues that, in New Mexico, illegitimate children are entitled to the same support rights as legitimate children and the application of a shorter statute of limitations period violates her child's equal protection rights.

In dealing with these two arguments presented by Mother, we initially note that in reviewing a legislative act, we construe each part of an act in conjunction with every other part of the act in order to produce a harmonious whole. *Lopez v. Employment Sec. Div.*, 111 N.M. 104, 105, 802 P.2d 9, 10 (1990). The fundamental principle of statutory construction is to further the legislative intent and purposes underlying the statute. *Giant Indus. Ariz., Inc. v. Taxation & Revenue Dep't*, 110 N.M. 442, 445, 796 P.2d 1138, 1141 (Ct.App. 1990). Legislative enactments are to be interpreted to accord with common sense and reason. *See Lopez*, 111 N.M. at 106, 802 P.2d at 11. We will not construe a statute to defeat the intended purpose or achieve an absurd result. *State v. Alderette*, 111 N.M. 297, 299, 804 P.2d 1116, 1118 (Ct.App.1990). Rather, statutes are to be interpreted in order to facilitate their operation and the achievement of their goals. *See Lopez*, 111 N.M. at 105, 802 P.2d at 10. We also have the duty to recognize what is necessarily implicit in the statutory language. *Naranjo v. Paull*, 111 N.M. 165, 168, 803 P.2d 254, 257 (Ct.App.1990).

In reading the Act as a whole, we conclude that the trial court erred in applying the general statute of limitations, Section 37-1-4, to the action for support. As noted earlier, Section 40-11-23(A) states that an action to determine a parent and child relationship under the Act shall be brought no later than three years after the child has reached the age of majority. "[P]arent and child relationship" is defined under the Uniform Act as being "the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations." *See* § 40-11-2. A paternity proceeding is a civil action to compel a putative father to support his child. *See P.V. v. L.W.*, 93 N.M. 577, 580, 603 P.2d 316, 319 (Ct.App. 1980). Section 40-11-8(A) provides that an action under the Act may be joined with an action for support. Along those same lines, Section 40-11-15(C), which is patterned after § 15(c) of the Uniform Act,

states that the judgment or order determining the existence or nonexistence of the parent and child relationship may contain other provisions dealing with the duty of past and future support. *See Jones v. Williams*, 592 So.2d 605, 607 (Ala.Civ. App.), *aff'd*, 592 So.2d 608 (Ala.1991); *Nettles*, 648 P.2d at 510–511. Section 40–11–17(A) empowers the trial court with the authority to enforce the father's obligations.

Applying the limitation in Section 40–11–23 to actions for support, as well as to actions for paternity, makes it more feasible for the goals of the Act to be met. *See generally Giant Indus. Ariz., Inc.*, 110 N.M. at 446, 796 P.2d at 1142; *Nettles*, 648 P.2d at 510. It is not logical to apply a more lenient statute of limitations to a paternity action but then apply a stricter limitations period to the child's cause of action to seek support. The importance of a paternity determination, in and of itself, is not to be discounted. However, unless the child is also afforded a reasonable length of time in which to secure the support which is due, a determination of paternity is of limited value, and the Act will not meet the goals which it was designed to meet. *See generally Lopez*, 111 N.M. at 105–06, 802 P.2d at 10–11; *P.V.*, 93 N.M. at 580, 603 P.2d at 319 (paternity proceeding is action to compel putative father to support his child). Based on the above, we hold that the trial court erred in applying the "catch-all" statute of limitations to the cause of action for support. Rather, in order to effectuate the purposes of the Act, we hold that the applicable statute of limitations for support proceedings is provided by Section 40–11–23. Furthermore, NMSA 1978, Section 40–11–23(B) (Repl. Pamp.1989), expresses a legislative intention that the Act apply retroactively by specifically providing that it is applicable to actions brought and dismissed because of the application of a statute of limitations of less than eighteen years. Mother's and Child's cause of action fits within that provision since it was filed beyond the August 16, 1984, date provided for in the subsection, and the trial court incorrectly applied a limitations period of less than eighteen

years. *See generally* § 40–11–23(B); *In Interest of B.G.*, 477 N.W.2d 819 (N.D. 1991) (Act applies retroactively if action to determine paternity commences after its enactment); *People ex rel. Kelly v. Pasko*, 184 Ill.App.3d 528, 132 Ill.Dec. 722, 540 N.E.2d 462 (1989) (apply extended limitations period to effectuate clearly expressed intent of legislature to provide children up to twenty years in which to enforce their right to support). Applying the Act retroactively is another method by which the goals it was designed to meet can effectively be met.

II. Whether the Trial Court's Interpretation of the Paternity Statute was Contrary to Public Policy and Led to the Unjust Enrichment of Father

■ This issue can be seen as a component of the first issue dealing with the statute of limitations. This is because Mother's basic argument is that the application of the shorter general statute of limitations of four years, Section 37–1–4, as well as Section 37–1–10 (minors have one year after termination of their minority to bring action under general statute of limitations), is contrary to existing New Mexico case law. She points out that a father has a duty to exhaust every reasonable resource to support his minor children. *See Wilson v. Wilson*, 45 N.M. 224, 227–28, 114 P.2d 737, 739 (1941). Mother also relies on *Britton v. Britton*, 100 N.M. 424, 428–29, 671 P.2d 1135, 1139–40 (1983), and *Stringer*, 92 N.M. at 100, 583 P.2d at 464, to argue that in matters of child support, the application of a short statute of limitations is contrary to the public policy of this state. Finally, Mother argues that any interpretation of the statute of limitations which gives an illegitimate child a shorter limitation period to commence an action for support violates the Equal Protection Clause of the United States and New Mexico Constitutions.

In *Britton*, the issue was whether child support arrearages are deemed to be final judgments such that action on them would be subject to the statute of limitations. The Supreme Court held that each monthly

child support installment was a final judgment which was not subject to retroactive modification. *Britton,* 100 N.M. at 427, 671 P.2d at 1138. The Court further held that the longest possible statute of limitations, seven years for collections, should be applied. *Id.* at 429, 671 P.2d at 1140. This was based on the rationale that any time period shorter than that would be against the child's best interests, would place an undue burden on the custodial parent, and would encourage delay tactics by the obligor. *Id.*

In other jurisdictions, equal protection arguments have been successful on many occasions in these types of cases. *See Abrams v. Wheeler,* 468 So.2d 126 (Ala. 1985); *see also,* Frederic B. Rodgers, *Equal Protection for the Illegitimate Child: Uniform Parentage Act of 1977,* 6 Colo.Law. 1299, 1304 (1977) (concluding it is unreasonable to bar the child's cause of action by reason of another person's failure to bring a paternity suit at an earlier time). For instance, in *District of Columbia ex rel. W.J.D. v. E.M.,* 467 A.2d 457 (D.C. 1983), the court determined that any classifications that distinguished between legitimate and illegitimate children should be subjected to an intermediate level of equal protection review. *Id.* at 461. The court held that a two-year statute of limitations on actions to establish and provide support was unconstitutional because it denied equal protection to children born out of wedlock. In the District of Columbia, unlike other limitations periods, the statute of limitations to establish paternity is not tolled during the plaintiff's minority. *Id.* at 464. In holding that the limitations period was unconstitutional, the court stated that the limitations period was not substantially related to the governmental interest in preventing the prosecution of stale or fraudulent claims. *Id.* at 464–45; *see also County of Lenoir ex rel. Cogdell v. Johnson,* 46 N.C.App. 182, 264 S.E.2d 816 (1980) (similar equal protection analysis in striking down three-year statute of limitations).

As noted earlier, the trial court applied the general statute of limitations of four years to the action for support. *See* § 37–

1–4. It also found that Section 37–1–4 was tolled during Child's minority, and thereafter, she had one year in which to commence her action for past support. *See* § 37–1–10. In contrast, in child support cases where there is no question of legitimacy, the applicable statute of limitations for enforcement actions is NMSA 1978, Section 37–1–2 (Repl.Pamp.1990), which allows a cause of action to be brought fourteen years from the date of the judgment. *See Britton,* 100 N.M. at 429, 671 P.2d at 1140 (rationale based on fact that each monthly child support installment is considered a final judgment).

■ Utilizing the rationale set forth in *Stringer,* we determine that the trial court's action is a denial of equal protection. As noted earlier, both legitimate and illegitimate children are entitled to support from their parents, and illegitimate children are entitled to the same support rights as children born in wedlock. *See Stringer,* 92 N.M. at 99, 583 P.2d at 465; *see also People in Interest of S.P.B.,* 651 P.2d 1213, 1214–15 (Colo.1982). By allowing Child only one year past the time she reached the age of majority, *see* § 37–1–10, as compared with the three years allowed in the Act, *see* § 40–11–23(A), the trial court in effect distinguished between the rights of legitimate and illegitimate children. Such a distinction is contrary to the purposes behind the Uniform Act, *see generally* § 40–11–2 (parent and child relationship defined), and imposes invalid distinctions between legitimate and illegitimate children. *See generally* 9B Uniform L.A., *Prefatory Note to Uniform Parentage Act,* p. 289; *Stringer,* 92 N.M. at 100, 583 P.2d at 464.

Furthermore, applying the Act's larger statute of limitations to actions for support furthers the policy behind the Act and New Mexico case law. When construing the Act as a whole, it presents illegitimate children with specific guidelines for actions dealing with both paternity and support. *See, e.g.,* §§ 40–11–8(A), –15(C), –17. Furthermore, by making that larger statute of limitations applicable to support proceedings, Child is not, in effect, "punished" for her mother's

failure to pursue a cause of action for paternity and support during Child's minority. Rodgers; *Prefatory Note* at 288.

Based on all of the above, we reverse the trial court in its application of the general "catch-all" limitations period, Section 37–1–4, and the general tolling statute for minors, Section 37–1–10, to the cause of action for support.

### III. Whether the Trial Court Erred in Refusing to Allow Evidence of Father's Wealth

■ The trial court refused to allow evidence of Father's wealth during Child's minority. Mother relies on *Blake v. Blake*, 102 N.M. 354, 695 P.2d 838 (Ct.App.1985), and *Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978), for the proposition that the trial court must consider the financial resources of both parents when determining support. Mother further argues that the trial court's award of past child support, even if correctly limited to four years, was an abuse of discretion because of the failure to consider Father's extensive holdings.

In response, Father's basic argument is that the trial court's consideration of his tax returns, which specified all his income from his assets, is sufficient evidence of his wealth for the trial court to determine what amount of support is due. He also argues that extensive testimony was received by the trial court from Father regarding his interest income and purchasing of assets. Father points out that the income relied on by the trial court was the total gross income from his two highest income-producing years. He further states that no evidence was presented to suggest that he did not use his assets to maximize his income.

As noted earlier, the trial court based its child support order solely on Father's average gross monthly income during two years. It is clear that the trial court based that decision on the child support guidelines, NMSA 1978, Section 40–4–11.1 (Cum. Supp.1992), which rely on the parents' combined monthly gross income in order to determine monthly child support amounts.

However, the trial court also found that based on Father's income and assets, he had the ability to pay child support for substantially all of Child's minority. *See C.B.D. v. W.E.B.*, 298 N.W.2d 493, 498 (N.D.1980) (award of more child support not clearly erroneous under Uniform Act where substantial evidence indicated putative father was wealthy).

■ *Spingola* states that in providing for the welfare of one's children, the trial court should consider the following factors, among others: 1) the total financial resources of both parents, including their monetary obligations, income, and net worth; 2) the life-style the children would be enjoying if the father and the mother were together and the non-custodial parent had his present income level; and 3) whether the income, surrounding financial circumstances, and station in life demonstrated an ability by the father to provide additional advantages to his children above their actual needs. *Spingola*, 91 N.M. at 743, 580 P.2d at 965.

■ By limiting its determination of Father's gross monthly income to his tax returns, the trial court was too strict in defining what it believed was income. Section 40–4–11.1(C)(2) defines "gross income" in part as income from any source. However, the trial court refused to consider Mother's evidence that Father had income as high as $100,000 a year during Child's minority, that he had cash savings of over $200,000, earned over $16,000 in yearly interest, had an IRA, and had purchased land with cash. Based on the above and given Father's significant wealth, aside from his average tax return stated income, the trial court erred in not considering these other sources of revenue.

We reverse and remand to the trial court so that it may consider the evidence Mother set forth in her offer of proof in accordance with Section 40–4–11.1(C)(2) and *Spingola*.

### IV. Whether the Trial Court Erred in Denying Mother Prejudgment Interest

Part of Mother's rationale for requesting prejudgment interest was that Father had

received interest on his investments during the time he did not pay support. The trial court denied prejudgment interest to Mother based on its rationale that the amounts to which she was entitled were not liquidated, certain, or a definite sum of money. However, as Mother points out, the trial court concluded that she was entitled to past child support and put forth a definite sum of $15,435. Mother contends the trial court's action of awarding past support in a definite sum, is inconsistent with the conclusion that prejudgment interest could not be awarded because the sums were not liquidated, certain, or a definite amount. Mother argues that the trial court's decision in this matter is in direct contradiction to the established law on prejudgment interest.

In response, Father argues that the denial of prejudgment interest is merited because the sums to which Mother is entitled are not liquidated, certain, or definite. In making this claim, Father relies on the trial court's finding of fact stating that the determination of the amount of child support that would have been awarded when Child was an infant is speculative and, by necessity, based on guess and conjecture. Father makes the distinction between this action, based on a statutory right, and a cause of action based in tort or contract, and argues that the same standard used for the latter causes of action should be applied to unspecified past child support obligations. That standard is that the amount due must be reasonably ascertainable in order for prejudgment interest to be awarded. *See, e.g., Ranch World of N.M., Inc. v. Berry Land & Cattle Co.,* 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990). Father also argues that child support is, of course, money used to support the child and is not the loss of income. He argues that neither statutory nor common law provide for interest for a past child support obligation which has not been established or reduced to a judgment. In sum, Father argues that the sum ordered by the trial court is not definite or certain since it is the result of the trial court's exercise of its discretion to provide a sum it felt was equitable under the facts before it.

In New Mexico, we do not have a prejudgment interest case in the context of a factual situation dealing with both paternity and support. Rather, it appears that the issue most commonly arises in the context of contract disputes and torts. *See, e.g., id.* (prejudgment interest should be awarded as a matter of right where defendant has breached contract to pay definite sum of money); *Strickland v. Roosevelt County Rural Elec. Coop.,* 99 N.M. 335, 344, 657 P.2d 1184, 1193 (Ct.App. 1982), (no abuse of discretion in denying prejudgment interest in wrongful death action), *cert. denied,* 99 N.M. 358, 658 P.2d 433, *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). The award of prejudgment interest is within the sound discretion of the trial court. *Haaland v. Baltzley,* 110 N.M. 585, 589, 798 P.2d 186, 190 (1990). Prejudgment interest should be awarded as a matter of right when the amount owed can be ascertained with reasonable certainty, even though liability remains to be proven at trial. *Bill McCarty Constr. Co. v. Seegee Eng'g Co.,* 106 N.M. 781, 783, 750 P.2d 1107, 1109 (1988).

Another jurisdiction has, however, dealt with the prejudgment interest issue under the Uniform Act. In *R.E.M. v. R.C.M.,* 804 S.W.2d 813 (Mo.Ct.App.1991), the court held that the mother's claim to recover past expenditures in a paternity action was unliquidated and did not earn prejudgment interest. In that case, the mother sought a declaration of the father's paternity of her minor child and an order for child support. The father admitted paternity. The Missouri court noted that the trial court has discretion in the matter of awarding prejudgment interest. Furthermore, the court reasoned that since the amount due to the mother was contingent upon the court's determination under the Act, the claim was unliquidated. It followed that no interest was due on the mother's unliquidated claim because the father did not know the amount he owed and could not be in default for not paying. *Id.* at 814.

General New Mexico case law on prejudgment interest and the analysis in *R.E.M.* provide the rationale for why the trial court did not abuse its discretion in denying Mother prejudgment interest. As noted in *R.E.M.*, any amount Father may have owed for child support was contingent upon the trial court's determination of parentage under the Act. *Id.* Until that legal determination was made, Father was under no legal obligation to support Child. It follows that, during Child's minority, Mother's claim was unliquidated since Father did not know in certain terms any amount he owed and could not be in default for not paying, since he was under no legal obligation to do so. *See id.*

The trial court was able to come up with a definitive amount of past support owed to Mother. However, that figure was settled upon only after Mother and Child filed their cause of action, Father admitted paternity, and evidence was taken of Father's income during Child's minority. In other words, up until all of the above events occurred, there was no sum certain which Father knew he legally owed but was purposely not paying to Mother. Based on the above, we find no abuse of discretion in the denial of prejudgment interest and, therefore, affirm the trial court. *See generally Roybal v. Morris*, 100 N.M. 305, 311, 669 P.2d 1100, 1106 (Ct.App.1983) (on appeal, findings of fact are construed to uphold a judgment rather than reverse it).

CONCLUSION

Based on the foregoing, the trial court is reversed on Issues I–III, and affirmed with regard to its determination regarding the denial of prejudgment interest. This case is remanded to the trial court for further proceedings consistent with this opinion, including a determination of the appropriate amount and apportionment of past child support between Mother and Child, from the date of birth to the date the Child attained majority. The parties shall each be responsible for their respective attorney fees and costs on appeal. However, Mother is awarded $500.00 in attorney fees for having to defend against Father's motion for rehearing.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.