884 P.2d 494

Stacy Ann **LEEDER** n/k/a Stacy
Brown, Petitioner–Appellee,

v.

Rodrick Lynn **LEEDER**, Respondent–
Appellant.

No. 15259.

Court of Appeals of New Mexico.

Aug. 1, 1994.

Richard S. Lees, Richard Lees & Associates, P.A., Santa Fe, for petitioner-appellee.

Thomas C. Montoya, Atkinson & Kelsey, P.A., Albuquerque, for respondent-appellant.

## OPINION

HARTZ, Judge.

Rodrick Leeder (Husband) appeals from a district court order increasing the amount of child support he must pay his former wife, Stacy Brown (Wife). The district court calculated the amount of child support Husband should pay by determining the income of Husband and Wife and then making the computations set forth in the statutory child support guidelines, NMSA 1978, Section 40-4-11.1 (Repl.Pamp.1994). Husband's brief in chief lists seven issues, three of which have multiple subissues. We consolidate Husband's issues as follows: (1) whether the district court failed to make findings necessary to justify the child support award, (2) whether the district court erred in refusing to depart from the statutory child support guidelines, (3) whether the district court erred by failing to include certain principal payments as income to Wife and reductions of income to Husband for the purpose of applying the guidelines, and (4) whether the district court improperly modified child support retroactively. We affirm the district court judgment in its entirety except that the modification of child support cannot be effective prior to the date Wife filed a pleading seeking increased child support.

## I.  FAILURE TO MAKE FINDINGS

New Mexico is blessed with two versions of NMSA 1978, Section 40-4-11 (Repl. Pamp.1994). Both deal with child support. One, which incorporates by reference the child support guidelines, is entitled "Determination of award of child support; notice to withhold income" and states:

> In any proceeding before a court in which the court has the duty or authority to determine liability of a parent for the support of minor children or the amount of that support, the court:
>
> A.  shall make a specific determination and finding of the amount of support to be paid by a parent in accordance with the provisions of Section 40-4-11.1 NMSA 1978;
>
> B.  shall not consider present or future welfare financial assistance payments to or on behalf of the children in making its determination under Subsection A of this section; and
>
> C.  for good cause may order the parent liable for support of a minor child to assign to the person or public office entitled to receive the child support that portion of the parent's periodic income or other periodic entitlements to money. The assignment of that portion of the parent's periodic income or other periodic entitlements to money may be ordered by the court by the issuance of a notice to withhold income against the income of the parent. The procedures for the issuance of the notice to withhold income, the content of the notice to withhold income, the duties of the parent liable

for child support and the duties of the employer responsible for withholding income shall be the same as provided for in the Support Enforcement Act, except that delinquency in payment under an order for support need not be a pre-existing condition to effectuate the procedures of the Support Enforcement Act for purpose of withholding income under this section.

The other version—entitled "Determination of award of child support; disregard of welfare payments; notice to withhold income"—is identical except for the language of Subsection A, which states:

A. shall make a specific determination and finding of the amount of support to be paid by a parent to provide properly for the care, maintenance and education of the minor children, considering the financial resources of the parent[.]

We shall refer to this second version as Section 40–4–11(?), because of the likelihood that its appearance in New Mexico law was an error. 1988 New Mexico Laws, Chapter 87, Section 1, enacted the first version. The first sentence of Section 3 of that statute repeals the version of Section 40–4–11 enacted by 1987 New Mexico Laws, Chapter 340, Section 1, and then reverses course by proceeding to enact language virtually identical to the 1987 version, creating what is now Section 40–4–11(?). Nonetheless, for the purposes of this opinion we will assume that both versions are in effect and must be reconciled. (This is not a case in which the same section has been amended by two different laws during the same legislative session; in that circumstance the latter amendment signed by the governor is presumed to be the law. NMSA 1978, § 12–1–8(A) (Repl. Pamp.1988).)

■ Husband contends that the district court order violated Section 40–4–11(A)(?) by failing to include specific findings regarding the needs of the children for care, maintenance, and education. *See Spingola v. Spingola,* 91 N.M. 737, 742, 580 P.2d 958, 963 (1978). We reject this contention.

■ Section 40–4–11.1(A) states:

In any action to establish or modify child support, the child support guidelines as set forth in this section shall be applied to determine the child support due and shall be a rebuttable presumption for the amount of such child support. Every decree or judgment of child support that deviates from the guideline amount shall contain a statement of the reasons for the deviation.

In addition, NMSA 1978, Section 40–4–11.2 (Repl.Pamp.1994), states that any deviation from the guideline amounts "shall be supported by a written finding in the decree, judgment or order of child support that application of the guidelines would be unjust or inappropriate." Reading Sections 40–4–11(A)(?), 40–4–11.1(A), and 40–4–11.2 together, we conclude that the guidelines are presumed to provide the proper amount of child support and that Section 40–4–11(A)(?) is ordinarily satisfied if the court sets forth the computations made under the guidelines. Section 40–4–11(A)(?) requires additional findings only when the children's needs for care, maintenance, and education, in light of the parents' financial resources, justify a departure from the guidelines.

Although under this interpretation there is substantial overlap in what is required by Sections 40–4–11(A)(?), 40–4–11.1(A), and 40–4–11.2, we perceive no way to avoid the overlap without distorting the meaning of the statutory language for no discernible purpose. *Cf. First Nat'l Bank v. Southwest Yacht & Marine Supply Corp.,* 101 N.M. 431, 436, 684 P.2d 517, 522 (1984) ("[S]tatutes which relate to the same subject matter should, if possible, be construed to give effect to every provision of each."). Perhaps this overlap is not too surprising in a statute that duplicates verbatim most of the language in its two versions of Section 40–4–11.

In this case the district court adopted the special master's detailed findings setting forth the computation under the guidelines. No further findings were necessary.

## II. DEPARTURE FROM THE GUIDELINES

■ Husband further contends that the district court should have deviated from the

guidelines in this case. He presented evidence that Wife's out-of-pocket expenditures for the children had been less than the child support ordered by the district court. He argues that the money Wife spent should be accepted as all that was necessary for the care, maintenance, and education of the children, and that any sums paid by Husband to Wife beyond what would be necessary to reimburse Wife for that level of expenditure would amount to alimony.

The district court adopted the special master's ruling that: "[Husband's] position concerning his calculation of the actual cost of caring for the children is not supported by the New Mexico Child Support Guidelines and thus is rejected." We understand this ruling to be that Husband's evidence, even if accurate, would not support his particular claim that the child support award was excessive. We agree with the ruling.

■ Section 40–4–11.1 "requires the court to use [the statutory guidelines] to calculate a parent's support obligation and declares that there is a rebuttable presumption that the amount[ ] derived from [this] calculation[ ] [is] the [appropriate] amount of the support obligation." *Perkins v. Rowson*, 110 N.M. 671, 674, 798 P.2d 1057, 1060 (Ct.App.), *cert. denied*, 110 N.M. 641, 798 P.2d 591 (1990). The guidelines are not intended to reflect what the parents have in fact been spending for the care, maintenance, and education of their children. Rather, they set a presumptive figure for what the parents *should* be spending. *See Lawrence v. Tise*, 107 N.C.App. 140, 419 S.E.2d 176, 183 (1992) (guidelines determine what parent should pay; they are not to be used to determine retroactive child support, which is based on amount actually expended on the child); *Kelly v. Kelly*, 624 So.2d 601, 603 (Ala.Civ.App.) (Yates, J., dissenting) (mother's testimony regarding what she spent on child does not establish actual needs of child), *cert. denied*, 624 So.2d 603 (Ala.1993); *cf. Spingola*, 91 N.M. at 743, 580 P.2d at 964 (When father's financial circumstances permit him "to furnish additional advantages to his children above their actual needs, the trial court should provide such advantages within reason."); *In re Paternity of Humphrey*, 583

N.E.2d 133, 134–35 (Ind.1991) (should deviate from guidelines when, because of laws governing aid to families with dependent children, payment of presumptive amount would in effect require father to support children not his own). For example, when, as in this case, the parents share custody and have a combined gross monthly income greater than $8300, the guidelines provide that they should spend 27.9% of their combined gross income for support of three children. Section 40–4–11.1(K). Perhaps the guidelines require Husband and Wife to spend more on their children than is good for the children. *Cf.* Ann M. Stanton, *Establishing the Amount of Child Support in* 2A *Alimony, Child Support and Counsel Fees—Award, Modification and Enforcement* §§ 13.03.[2], [4], 13.04[6] (1988) (discussing how child support guidelines consider high parental income); *Richardson v. Richardson*, 8 Haw. App. 446, 808 P.2d 1279, 1286–87 (1991) (noting Hawaii statute permitting deviation from child support guidelines if amount higher than reasonable needs of child would result from high parental income). But there is no evidence here to support such a contention. Certainly, Husband's computations of what Wife had been spending on their children do not establish that additional expenditures would be harmful.

We agree with the special master and the district court that Husband's evidence regarding what Wife had spent on the children would not establish that the calculations under the child support guidelines led to an award of improperly high child support.

## III. CALCULATION OF INCOME OF HUSBAND AND WIFE

■ Husband next contends that the district court used the wrong income figures for Husband and Wife in applying the child support guidelines. He focuses on three sources of income received by Wife: (1) monthly payments of $4000 from Husband as part of the division of the parties' community assets, (2) monthly payments of $750 from a real estate contract, and (3) periodic payments from Husband to satisfy a money judgment Wife obtained against Husband and his church. Payments from all three sources

consisted partly of principal and partly of interest. The district court included the interest portion as income to Wife. With respect to the real estate contract, the court also included as income that portion of the principal payment that constituted capital gain. Husband contends that all of each payment should be included in Wife's income and that Husband's payments should be subtracted from his income.

Husband cites *Talley v. Talley,* 115 N.M. 89, 847 P.2d 323 (Ct.App.1993), to support his position. He contends that *Talley* held that payments on real estate contracts should be included in "gross income" when applying the child support guidelines. Husband reads too much into *Talley.* It held simply that "gross income" includes "income from any source," which could include income from a real estate contract. *Id.* at 91, 847 P.2d at 325. The opinion contains no discussion suggesting that the full amount of payments on real estate contracts necessarily constitutes income.

Husband also relies on *Padilla v. Montano,* 116 N.M. 398, 862 P.2d 1257 (Ct.App. 1993). But the only proposition in *Padilla* at all relevant to this appeal is that the district court is not limited to tax return information in determining a parent's gross income when computing child support. *Id.* at 406, 862 P.2d at 1265. *Padilla* says nothing about whether principal payments constitute income.

We therefore turn to the pertinent statutory language to resolve Husband's contention. Section 40–4–11.2(C)(2) says:

"gross income" includes income from any source and includes, but is not limited to, income from salaries, wages, tips, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, significant in-kind benefits that reduce personal living expenses, prizes and alimony or maintenance received, provided:

(a) "gross income" shall not include benefits received from means-tested public assistance programs or child support received by a parent for the support of other children;

(b) for income from self-employment, rent, royalties, proprietorship of a business or joint ownership of a partnership or closely held corporation, "gross income" means gross receipts minus ordinary and necessary expenses required to produce such income, but ordinary and necessary expenses does not include expenses determined by the court to be inappropriate for purposes of calculating child support;

(c) "gross income" shall not include the amount of alimony payments actually paid in compliance with a court order;

(d) "gross income" shall not include the amount of child support actually paid by a parent in compliance with a court order for the support of prior children; and

(e) "gross income" shall not include a reasonable amount for a parent's obligation to support prior children who are in that parent's custody. A duty to support subsequent children is not ordinarily a basis for reducing support owed to children of the parties but may be a defense to a child support increase for the children of the parties. In raising such a defense, a party may use Table A as set forth in Subsection J of this section to calculate the support for the subsequent children[.]

Section 40–4–11.1(C)(1) states that "income" is:

actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed. The gross income of a parent means only the income and earnings of that parent and not the income of subsequent spouses, notwithstanding the community nature of both incomes after remarriage[.]

These definitions make clear that the statute is not adopting some peculiar definition of "income" that is alien to common usage. To include a return of capital as income would be a significant departure from common usage. Of particular significance is the inclusion of "capital gains" in the definition of "gross income." A "capital gain" is a "profit from the sale of assets." *The Random House Dictionary of the American Lan-*

*guage* 219 (1971). There is no profit when one receives only a return of capital. If the full amount of payments of principal were intended to be included as income, the statute should speak of "returns of capital" rather than "capital gains." *See Whitaker v. Colbert*, 442 S.E.2d 429, 431 (Va.Ct.App.1994) (capital gains are not returns of capital).

We conclude that the portion of the payments on the real estate contract that constitutes return of capital is not income to Wife. The district court correctly included in Wife's income only the interest and capital gain from the contract.

The same reasoning applies to the payments Wife receives from her stipulated judgment against Husband and his church. Wife's claim in the lawsuit was that Husband had improperly contributed community assets to the church and she was entitled to the return of her share (one-half) of the contributions. Thus, the judgment did not represent compensation for lost income but rather a return of capital—the community cash contributed to the church. *Cf. In re Marriage of Fain*, 794 P.2d 1086, 1087 (Colo.Ct.App. 1990) (payments on judgment for personal injury were income to Husband). The portions of the payments on the judgment that constitute interest on the judgment were properly included by the district court as income to Wife. The portions of the payments that represent only the principal amount of the judgment, however, are not income to Wife and were properly not included as deductions from Husband's income. *Cf. Guy v. Guy*, 600 So.2d 771, 773–74 (La.Ct. App.1992) (distinguishing capital from income and holding that life insurance proceeds are not income).

Somewhat more difficult to analyze are the monthly payments of $4000 from Husband to Wife for equalization of division of the parties' community assets. Upon dissolution of their marriage the parties agreed that to divide the community property equally Husband should receive his business, his automobile, and personal property in his possession, while Wife should receive the residence, the real estate contract, personal property in her possession, her automobile, and $192,500. Husband was required to pay Wife the $192,-500 in monthly installments that include interest. Husband and Wife agree that the interest portion of the payments is income to Wife.

Husband then goes one step further. He contends that the $192,500 comes essentially from the increase during the marriage in the value of the business, which had been acquired with a very small investment. If there had been no increase in value, equal division of the community assets would not have required the $192,500 payment. In Husband's view the payment to Wife represents his purchase of her share of the business and the proceeds to her represent almost entirely capital gain. Because capital gain is undoubtedly income, he argues, virtually all of the $4000 monthly payment constitutes income to Wife.

■ Although Husband's argument is an interesting one, we reject it. When applying the child support guidelines, the division of community property should not be treated as an income-producing event. *Cf.* 26 U.S.C. § 1041(a)(2) (federal income tax code does not recognize any gain or loss when property is transferred to a former spouse incident to divorce); Roland Hjorth, *The Effect of Federal Tax Consequences on Amount of Property Allocated to Spouses in State Court Dissolution Proceedings*, 24 Fam.L.Q. 247, 257 (1990). In other words, we will not construe a division of community property as a sale of property from one spouse to the other. There being no sale, there is no income. *See Random House Dictionary, supra*, at 219 (capital gain is profit from the *sale* of assets); *Rich v. Narofsky*, 624 A.2d 937, 939 (Me. 1993) (capital gain income is realized only when an asset is sold). Two considerations persuade us not to construe property division as a sale.

First, dissolution of marriage involves enough complications without adding this one. The present case illustrates some of the complications that could arise:

(1) The parties would have to agree, or the court determine, how much of the value of the business constitutes capital appreciation.

(2) If Wife received capital-gain income because, in a sense, Husband bought out her share of the business, should Husband be considered to have received capital-gain income because, in the same sense, Wife purchased his interest in the community residence and the real estate contract? Presumably, the values of the residence and real estate contract include capital appreciation. Although Wife was the only one to receive cash in the property distribution, that cash could be viewed as the net amount from Husband's purchase of Wife's share of the business less Wife's purchase of Husband's share of the home and contract.

(3) In what year did Wife receive the capital-gain income from the "sale" of her interest in the business? One could say that the purchase took place on the date of the order approving the property dissolution, at which time the sale price consisted of a promissory note. Under that view, Wife received a substantial amount of capital-gain income in 1991 but no such income in later years. Consequently, the income used for computing child support would vary significantly from year to year. A different income stream would be calculated, however, if the capital gain from the "sale" of the business is considered to be income only as Wife receives the periodic payments on the promissory note.

(4) If Husband sells the business (which presumably would require him to pay a substantial income tax on the capital gain), should his entire capital gain be included as income for purposes of the child support guidelines, even though that results in double counting of that portion of the capital gain which was already considered to be Wife's income?

If property division were held to be an income-producing event, negotiations for property division would likely be prolonged as each party tries to structure the division to maximize its advantage for future computations of child support. Given that one of the three express purposes of the child support guidelines is to "*improve the efficiency* of the court process by promoting settlements and giving courts and the parties guidance in establishing levels of awards[,]" Section 40–11.1(B)(3) (emphasis added), we doubt that the legislature contemplated introducing such complexity into the process.

Second, the child support guidelines are predicated on the assumption that if the parents have a certain income, then they should spend a certain amount on their children. As income rises, the amount that should be devoted to the children also rises. We fail to see, however, how the parents are more able to provide for the children simply because they divide their property between themselves. Yet, if property division could be an income-producing event, then the division itself would increase the amount that should be devoted to the children under the guidelines. This results because the income deemed to be received by one spouse from the property division would not be offset by a corresponding decrease in income for the other spouse. Even if one could treat the cash payments from Husband to Wife as a purchase by Husband of Wife's interest in the business, thereby generating "capital-gain" income to Wife, it would be too great a strain on the meaning of "income" to consider Husband's purchase of Wife's interest as a loss of income to him equal to Wife's income. Consequently, treating Wife's receipt of cash as including capital-gain income would increase the combined income of the former spouses and thereby increase the guideline amount that they should spend on their children.

The property-settlement agreement and the order confirming it do not describe the division of community property as including a sale by Wife to Husband of her interest in the community business. For the above reasons, we will not construe the division as a sale. The division of community property between Husband and Wife did not create any income to either party for purposes of the child support guidelines. The district court correctly ruled that the sole income to Wife from Husband's monthly payments pursuant to the property division is the interest portion of the payments. *Cf. Mabee v. Mabee*, 159 Vt. 282, 617 A.2d 162 (1992) (for purpose of computation pursuant to child support guidelines, income does not include

capital gain resulting from appreciation in value of property before property division).

## IV. RETROACTIVITY OF CHILD SUPPORT MODIFICATION

 Finally, Husband complains that the district court erred in modifying child support effective May 5, 1992, when Wife's first pleading seeking an increase in child support was filed on January 5, 1993. We agree. We have recently restated the rule that modifications of child support cannot be effective before the date of the pleading seeking increased or decreased support. *See Rabie v. Ogaki,* 116 N.M. 143, 149, 860 P.2d 785, 791 (Ct.App.1993); *Montoya v. Montoya,* 95 N.M. 189, 619 P.2d 1233 (1980).

Wife suggests two reasons why the general rule should not apply here. We reject both. First, Wife points out that Husband filed a pleading in January 1993 seeking modification of child support retroactive to October 25, 1992. But Husband's request for improper relief does not entitle Wife to obtain improper relief. This is not an instance of "invited error." *See Cox v. Cox,* 108 N.M. 598, 603, 775 P.2d 1315, 1320 (Ct.App.), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989). Husband is not complaining on appeal of district court action that he had requested. Also, Wife sought seven months of retroactive modification beyond that sought by Husband. Moreover, Husband specifically complained in district court about the retroactive modification. *See Thomas v. City of Santa Fe,* 112 N.M. 456, 458, 816 P.2d 525, 527 (Ct.App.) (amended findings and conclusions superseded those originally submitted, thereby foreclosing contention that original submission invited error), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991).

Second, Wife points out that the partial decree of dissolution of marriage provides that "[c]hild support shall be reviewed by the parties annually and adjusted effective in May of each year." She contends that because the child support was not adjusted in May 1992, it was appropriate for the court to order modification retroactive to that time. Wife ignores, however, a further provision of the same paragraph of the partial decree, which states, "If the Court determines that a different amount of child support is required, the effective date of the changed amount is the date the party petitions the Court for the change." Thus, there is nothing to suggest that the parties had agreed to an order permitting retroactive modifications otherwise improper under *Rabie* and *Montoya.*

We hold that the district court's order must be revised to eliminate any adjustment in child support prior to January 1993.

## V. CONCLUSION

For the above reasons we affirm the order of the district court, except that we remand to the district court to modify the order by eliminating any increase in Husband's child support obligations prior to Wife's January 1993 pleading seeking an increase. We award attorney's fees of $2000 to Wife on appeal.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.