No. 2-19-0716
Order filed April 9, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF NATHAN SOESBE, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellee, | ) ) | |
| and | ) | No. 12-D-1708 |
| | ) | |
| STEPHANIE SOESBE, n/k/a Stephanie Heusuk, | ) ) ) | Honorable Robert E. Douglas, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Zenoff and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Respondent forfeited claim of error in child support dispute by failing to advocate a theory for excluding from income her undistributed partnership earnings; but the judgment was reversed and the cause was remanded because the trial court did not use the proper formula for calculating child support.

¶ 2   Respondent, Stephanie Soesbe, n/k/a Stephanie Heusak, appeals from an order of the circuit court of Du Page County calculating retroactive child support that she owed to petitioner, Nathan Soesbe. She argues that the trial court: (1) erred by treating undistributed partnership earnings as income and (2) otherwise calculated child support improperly. We conclude that

Stephanie forfeited the first argument. However, it appears from the record that the trial court did not calculate child support properly. We therefore reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      On September 12, 2013, the trial court entered a judgment dissolving the parties' marriage. The judgment reserved the issue of child support for their two surviving children. On July 12, 2016, the trial court ordered Nathan to pay child support in the amount of $441.83 every other week plus 28% of the net amount of any additional income, including bonuses and commissions. On September 6, 2017, Nathan filed a petition for modification of child support. He contended that, following mediation, the parties agreed that Nathan would have more overnight visits with the children. The parties' new visitation schedule would increase Nathan's overnight visits from 120 per year to 146 overnight visits in odd-numbered years and 150 even-numbered years.

¶ 5      On December 5, 2018, the trial court ordered Stephanie to pay Nathan $462.84 per month in child support. That amount was based on imputed incomes of $200,000 per year for Stephanie and $75,000 per year for Nathan. According to the order, the imputed incomes were "gross amounts derived from the parties' W-2's, 1099's and Line 14 from all K-1's." The order required the parties to "[t]rue up" their incomes by April 15 of each year. The trial court reserved the issue of retroactive child support.

¶ 6      On February 25, 2019, the trial court entered an order indicating that the parties had stipulated that Nathan was entitled to retroactive child support of $7405.44 ($462.84 per month for the period from September 6, 2017, to December 5, 2018)[1] and a refund of $19,574.79 that he

---

[1] This figure appears to be in error. The amount represents child support for a 16-month period. However, September 6, 2017, to December 5, 2018, is only 15 months.

had paid as child support since filing the petition to modify. The sum of those amounts was $26,980.23. Nathan agreed that that amount would be reduced by his share (28%) of child-related expenses in the amount of $6125. The order further provided, "Both parties agree [and] acknowledge that the total of retroactive child support and child related expenses due [and] owing shall be affected by the 2017 [and] 2018 true up pursuant to this court's order of December 5, 2018."

¶ 7 On June 7, 2019, a hearing was held to "true up" the parties' incomes. Nathan contended that Stephanie's income for 2017 and 2018 consisted of money received as gifts, income reported on Form W-2, and self-employment earnings from line 14 of Schedule K-1 of Form 1065 on which taxable partnership income from a family business was reported.[2] Those amounts were as follows:

| Stephanie's Income | 2017 | 2018 |
| --- | --- | --- |
| Form W-2 Income | $144900.00 | $144900.08 |
| Schedule K-1 (Form 1065), Line 14 | $193030.00 | $289243.00 |
| Interest Income | $922.00 | $1175.00 |
| Gifts | $7839.65 | $7839.65 |
| **Total** | **$346691.65** | **$433157.73** |

---

[2]Form 1065 is the Internal Revenue Service's partnership information return. Partnerships must file information returns, but they do not pay federal income taxes. *U.S. v. Woods*, 571 U.S. 31, 38 (2013). Instead, partnership income is "pass[ed] through" to the partners and added to their income for tax purposes. *Id.* Individual partners' shares of partnership income are reported on Schedule K-1. Self-employment earnings are reported on line 14 of Schedule K-1.

Nathan contended that all of these amounts were income for purposes of calculating child support, such that Stephanie's monthly income was $28,890.97 for 2017 and $36,969.89 for 2018.[3] Nathan indicated that he earned $66,950.61 in 2017 and $89,651.71 in 2018, which corresponded to monthly incomes of $5579.21 and $7470.97 in those two years respectively. He advised the court that he attempted to calculate child support by using a table published by the Department of Healthcare and Family Services (Department), but the table only covered combined monthly incomes up to $30,000. He contended, however, that Stephanie should pay $1257 per month which would "max[ ] out the top of the table." Nathan argued that that amount was fair because it was "almost exactly the same amount *** that [he] was paying when [he] was paying child support."

¶ 8      Stephanie testified that she was employed as chief operating officer of Rhea and Kaiser and that all of her income from that position was reported on Form W-2. Stephanie received Schedule K-1 of Form 1065 for 2017 and 2018 from Rhea Family Farms, LP (RFF). RFF was a family business that owned and operated farmland. Stephanie held a 24¾% interest in RFF. She testified that she performed no functions for RFF and had "no access to or financial control over any of the expenses or income brought in by the business." Line 19 of the Schedule K-1 showed distributions of $21,000 in 2017 and $42,500 in 2018. Stephanie testified that the purpose of the distributions was to defray the taxes on her share of partnership income.

¶ 9      On June 25, 2019, the trial court found that, despite the parties' prior stipulation, the amounts reported on line 14 of Stephanie's Schedule K-1 forms were not income. The trial court reasoned that "[t]he amount on line 14 *** is not a gain or recurring benefit to [Stephanie] and therefor [sic] not includable as income." On July 24, 2019, the trial court held a hearing to

_____

[3] Our own calculation reveals that Stephanie's monthly income for 2018 was $36,929.81.

determine the amount of retroactive child support. Nathan argued that, pursuant to the trial court's June 25, 2019, order, amounts reported on line 14 of Schedule K-1 were not to be treated as income *going forward*. He maintained, however, that, pursuant to the February 25, 2019, order, those amounts would be included as income for purposes of calculating retroactive support. The trial court agreed and entered an order awarding Nathan $37,683.58[4] This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11     Illinois currently uses the "income shares model" to calculate child support. Under that model, child support is determined in accordance with the Department's guidelines that reflect "the percentage of combined net income that parents living in the same household in this State ordinarily spend on their child." 750 ILCS 5/505(a)(1) (West 2018). The first step in calculating child support is determining each party's gross and net incomes. Subject to exceptions that do not apply here, section 505(a)(3)(A) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(3)(A)) (West 2018)) defines " 'gross income' " as "the total of all income from all sources." In *In re Marriage of Plowman*, 2018 IL App (4th) 170665, ¶ 21, the Fourth District observed as follows:

> "For child support purposes, our supreme court has broadly defined 'income' to include 'gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children.' [Citation.] It has also noted '[s]uch gains

---

[4] It is not clear how the trial court reached that result. It appears that the trial court intended to award Nathan: (1) $1257 a month in child support for 16 months plus (2) a refund of the $19,574.79 in child support that Nathan paid to Stephanie minus (3) Nathan's 28% share of child-related expenses in the amount of $6125. That would result in an award of $37,971.79.

and benefits are normally linked to employment or self-employment, investments, royalties, and gifts.' [Citation.] Our courts have found the definition of income to be broad enough to include lump-sum workers' compensation awards, individual retirement account distributions, military allowances, pensions, investment income and earnings from bonds and securities, severance pay, deferred compensation payments, distributions from a trust, and gifts from parents. [Citation.]."

¶ 12    Net income is determined by subtracting a standardized tax amount from gross income unless the parties agree to, or the trial court orders, an individualized determination. The standardized method uses schedules published by the Department showing the net income that corresponds to a given amount of gross income. See Technical Documentation: Illinois Schedule of Basic Obligations and Standardized Net Income Table Appendix B, https://www.illinois.gov/hfs/SiteCollectionDocuments/TechnicalDocumentationIllinoisScheduleNetIncomeTable.pdf (last visited Mar. 31, 2020) [https://perma.cc/8ASQ-T4XG]; Updated Appendix B: 2018 Income Conversion Table, https://www.illinois.gov/hfs/SiteCollectionDocuments/2018Addendum_Basic_Obligations.pdf (last visited Mar. 31, 2020) [https://perma.cc/ME9C-KEQN].

¶ 13    Once the parties' net incomes are known, a basic child support obligation is determined by consulting a schedule published by the Department showing the amount of child support corresponding to the parent's combined net income. See Illinois Department of Healthcare and Family Services Income Shares Schedule Based on Net Income, https://www.illinois.gov/hfs/SiteCollectionDocuments/IncomeSharesScheduleBasedonNetIncome.pdf (last visited Mar. 31, 2020) [https://perma.cc/CLW5-XQYW]. To determine each parent's support obligation, his or her net income is divided by the parties' combined net income and the scheduled basic child support amount is multiplied by the quotient. See Illinois Department of Healthcare and Family Services

Support Obligation Worksheet, https://www.illinois.gov/hfs/SiteCollectionDocuments/ StandaloneSupportObligationWorksheet.pdf, lines 8-11 (last visited Mar. 31, 2020) [https://perma.cc/9GX4-S66P]. Section 505(a)(1.5) (750 ILCS 5/505(a)(1.5) (West 2018)) provides that "[a]lthough a monetary obligation is computed for each parent as child support, the receiving parent's share is not payable to the other parent and is presumed to be spent directly on the child."

¶ 14    The formula is adjusted where, as in this case, each parent exercises 146 or more overnights per year. 750 ILCS 5/505 (a)(3.8) (West 2018). In that case, each parent's child support obligation is multiplied by 1.5 and is further multiplied by the percentage of the child's overnights with the other parent. *Id.* The support amounts are offset against one another, and the parent owing more support pays the difference to the other parent. *Id.*

¶ 15    Stephanie contends that by including as income the figure listed on line 14 of Schedule K-1, the trial court erroneously ignored its prior order of June 25, 2019, and disregarded her testimony that the amount from line 14 was not income. These arguments are unpersuasive. The June 25, 2019, order was interlocutory and was subject to modification at any time before the entry of a final judgment. *Berry v. Chade Fashions, Inc.*, 383 Ill. App. 3d 1005, 1009 (2008). Accordingly, the inconsistency between the orders is not, in itself, grounds for reversal.

¶ 16    Whether, or under what circumstances, undistributed partnership earnings constitute income for purposes of child support must be determined with reference to the statutory definition of income. Stephanie could testify about the facts bearing on whether, under the applicable legal principles, a given sum qualifies as income. However, the threshold determination of *what those principles are* is a matter of statutory construction. Stephanie's conclusory testimony that the amount reported on line 14 was not income necessarily reflects an interpretation of section

505(a)(3) that excludes that amount either categorically or under the circumstances of this case. However, it is a bedrock principle of law that a witness may not give testimony regarding the meaning of statutory language or the witness's legal conclusions. *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App 3d 542, 574 (2009). Whether particular amounts fall within the definition of income is a question of law that is subject to *de novo* review. *Cf. In re Marriage of Plowman*, 2018 IL App (4th) 170665, ¶ 22.

¶ 17    Stephanie's brief suggests no analytical framework for determining whether to treat undistributed partnership earnings as income for purposes of setting child support, instead leaving us to discover or develop one. However, this court is not a depository into which a party may dump the burden of research. *People v. O'Malley*, 356 Ill. App. 3d 1038, 1046 (2005). "The failure to elaborate on an argument, cite persuasive authority, or present a well-reasoned theory *** results in forfeiture of the argument." *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54. We acknowledge that there appears to be no Illinois case law directly on point. However, Stephanie should have at least provided some analysis supported by the most closely analogous case law available.

¶ 18    Our own cursory research reveals that a number of courts from other states have addressed a question that would appear to be closely analogous to the one raised here: whether a subchapter S corporation's retained earnings should be treated as income for purposes of child support. Subchapter S corporations are taxed like partnerships: taxes on their income are passed through to shareholders. See *In re Marriage of Joynt*, 375 Ill. App. 3d 817, 821-22 (2007). Courts have generally addressed the question on a case-by-case basis, considering factors such as the obligor's ownership share and level of control over corporate distributions, the legitimate business interests justifying the retention of corporate earnings, past earnings, and evidence that earnings were

retained for the purpose of reducing the child-support obligation. See, *e.g.*, *J.S. v. C.C.*, 454 Mass. 652, 662 (2009); *In re Sullivan*, 167 Ohio App. 3d 458, 462-63, 855 N.E. 2d 554, 557 (2006); *Zold v. Zold*, 911 So. 2d 1222, 1232 (Fla. 2005); *In re Marriage of Brand*, 273 Kan. 346, 359-60, 44 P.3d 321, 330 (2002); *Fennell v. Fennell*, 753 A.2d 866 (Pa. Super. 2000). In *Jurado v. Jurado*, 119 N.M. 552, 892 P.2d 969 (N.M. Ct. App. 1995), it was recognized that a partnership's taxable earnings retained for capital reinvestment can be treated as an ordinary and necessary expense required to produce business income, which is excluded from the definition of income for child support purposes. See also *Roberts v. Wright*, 117 N.M. 294, 297, 871 P.2d 390, 393 (N.M. Ct. App. 1994) (for purposes of child support, income did not include corporate earnings reinvested in a large inventory that was necessary for business operations).

¶ 19    In light of Stephanie's failure to provide citation to persuasive authority and well-developed argument on the issue, we decline to decide whether Illinois should follow the approach taken in out-of-state cases. Accordingly, we will not disturb the trial court's ruling that retained earnings reported on line 14 of the Schedule K-1 is part of Stephanie's gross income for purposes of calculating retroactive child support.

¶ 20    Stephanie also contends that the only basis for setting monthly retroactive child support at $1257 was Nathan's claim that that was roughly the amount of child support that he had paid. Stephanie argues that the record does not indicate that Nathan ever paid that amount, and that, in any event, it was error to base her child support obligation on the amount that Nathan was paying. Nathan responds that the trial court determined child support by "plugg[ing] the parties' combined income into the Income Shares Shared Parenting calculator, using the 148 overnights per year the children are with Nathan, deducted the standardized deduction [*sic*] the formula provided by the calculator, and determined that their combined incomes exceeded the highest level of the tables

[*sic*] guidance, $30,000 month [*sic*], which equals $1,257 per month." We find nothing in the record to indicate that the trial court ever actually performed that calculation. There appears to be no reason why the trial court could not have adhered to the guidelines when calculating retroactive child support. We therefore remand the cause to the trial court for a proper calculation of retroactive child support based on the parties' incomes in 2017 and 2018, including the amounts set forth on line 14 of Stephanie's Schedule K-1s.

¶ 21                                        III. CONCLUSION

¶ 22    For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings consistent with this order.

¶ 23    Reversed and remanded with instructions.